CATHARINE MAHANEY, Respondent, *v.* MARGARET CARR, Appellant, Impleaded with Others.

1: SPECIFIC PERFORMANCE — WHEN ACTION TO ENFORCE SPECIFIC PERFORMANCE OF ALLEGED AGREEMENT TO ADOPT A CHILD AND GIVE IT A CERTAIN SHARE OF ADOPTED FATHER'S PROPERTY CANNOT BE MAINTAINED. Under an alleged oral agreement between the father and grandfather of an infant, who was a child of a deceased daughter of the latter, by which the former surrendered all of his rights in and to the infant and permitted the latter to adopt the infant as his daughter, take his name and have the sole benefit of her society, services and earnings, in consideration of which he agreed with the father, for and in behalf of the infant, that she should have upon his death a one-fourth interest and share in all of the real and personal property which he should thereafter acquire, the alleged adopted daughter cannot, after the death of her grandfather, who gave his property by conveyance and will to his wife, maintain an action against his widow and the executor of the will for the specific performance of the contract and to have such conveyances and will declared null and void as against her alleged one-fourth interest in the property of her grandfather.

2. SAME — WHEN FINDING INSUFFICIENT TO SUPPORT JUDGMENT FOR SPECIFIC PERFORMANCE. Where it appears that the plaintiff's right to any part of her grandfather's property was limited to such as he might "thereafter acquire," and there is no finding that the deceased grandfather acquired any property after the date of the alleged agreement, a judgment for the specific performance of the alleged contract is not warranted or supported by the facts found.

3. EVIDENCE — WHERE IT APPEARS THAT A SUPPOSED ORAL AGREEMENT WAS IN WRITING IT IS ERROR TO ADMIT FURTHER PAROL EVIDENCE THEREOF OR RETAIN WHAT HAS BEEN GIVEN. Where it appeared upon the cross-examination of plaintiff's father, who had testified as to the agreement between himself and the grandfather, that the alleged agreement was reduced to writing and that papers were made, it is reversible error to admit further parol proof of the agreement against defendant's objection thereto, and to deny defendant's motion to strike out what had been given, since the plaintiff was bound to prove her case by competent evidence, and where it appeared that the transaction was in writing, it was incumbent upon her to produce it, or show that it was lost or destroyed, and thereupon be required to confine the proof to secondary evidence of the contents of the papers.

*Mahaney* v. *Carr*, 68 App. Div. 650, reversed.

(Argued June 11, 1903; decided June 25, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 23, 1902, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward R. O'Malley* for appellant. The language upon which it is sought to base this alleged contract is indefinite, uncertain and incapable of an intelligent meaning. (22 Am. & Eng. Ency. of Law, 1006 ; *Foote* v. *Webb*, 59 Barb. 38 ; *Pt. Jervis* v. *N. Y. R. Co.*, 56 Hun, 646 ; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323 ; *Buckmaster* v. *Thompson*, 36 N. Y. 558 ; *Stanton* v. *Miller*, 58 N. Y. 592 ; Story on Equity, § 767.) The alleged promise whether one to give a child's share of Joseph Carr's property or a child's share of his and his wife's property is non-enforcible because of uncertainty. (*Gates* v. *Gates*, 34 App. Div. 608 ; *Woods* v. *Evans*, 113 Ill. 186 ; *Wallace* v. *Rappeleye*, 103 Ill. 249 ; *Graham* v. *Graham*, 34 Penn. St. 475 ; *Wilson* v. *Heath*, 23 Misc. Rep. 714 ; *Hamlin* v. *Stevens*, 32 Misc. Rep. 434 ; *Gall* v. *Gall*, 64 Hun, 600 ; *Brown* v. *Ochs*, 77 App. Div. 20 ; *Conlon* v. *Mission of Immaculate Virgin*, 39 Misc. Rep. 215 ; *Brant-ingham* v. *Huff*, 174 N. Y. 53.) This alleged contract should not be enforced because it was not a contract of binding mutuality or one that could be enforced as against the plaintiff. (*Maddison* v. *Alderson*, L. R. [8 App. Cas.] 467.) The alleged contract is unreasonable, unfair, unjust, is subversive of the Statute of Wills, and against public policy. (Pom. Eq. Juris. § 1405.) None of the evidence given relative to the alleged contract was competent because it appeared from the same that there was a written contract, and it does not appear that it had been lost or destroyed, or that any effort was made to secure the same. (*Berrian* v. *Sanford*, 1 Hun, 624 ; Greenl. on Ev. §§ 84, 509, 560, 575 ; *Hatch* v. *Pryor*, 2 Abb. Ct. App. Dec. 343 ; *Rouse* v. *McDowell*, 88 Hun, 532 ; *Peck* v. *Valentine*,

95 N. Y. 569; Stephen's Dig. Ev. 61; *Lallman* v. *Hovey*, 92 Hun, 419 ; *People* v. *Smith*, 10 Misc. Rep. 100 ; *Nichols* v. *K. I. O. Co.*, 56 N. Y. 618.)

*Wallace Thayer* for respondent. The contract is enforce-able. (*Healy* v. *Healy*, 55 App. Div. 315 ; 166 N. Y. 624; *Winne* v. *Winne*, 166 N. Y. 263 ; *Gates* v. *Gates*, 34 App. Div. 608.)

O'BRIEN, J. This action was in form an action for specific performance and resulted in a judgment for the plaintiff which has been unanimously affirmed. There are two questions still open for review in this court, and these questions are, first, whether the findings of fact sustain the judgment, and, second, whether there was error of law committed by the learned trial judge in the rulings and decisions in the course of the trial to which exceptions were taken. The review of the case in this court must, therefore, be confined to those two general questions.

The plaintiff is the granddaughter of one Joseph Carr, who died on the 18th of April, 1898, leaving a will in which he disposed of all of his property. He made some small bequests and then gave the rest, residue and remainder to the defendant, Margaret Carr, his widow by a second marriage. The will was duly proved and the executor took charge of the estate. The deceased during his lifetime conveyed and transferred to his wife certain real estate and personal property by way of gift, but the amount of property that she received under these transfers or under the will does not appear. The plaintiff's mother was the daughter of Joseph Carr, and she died in the year 1876, when the plaintiff was about five years old. Carr had three other children that survived the plaintiff's mother, and are still alive. In the year 1891 the plaintiff's grandmother, Carr's first wife, died, and subsequently he married the defendant Margaret Carr.

The judgment in this case rests entirely upon the following finding of fact: "That the plaintiff is the daughter of James Connelly and that prior to and until about the month of April,

1876, the plaintiff lived with her said father as his daughter. That during or about the month of April, 1876, plaintiff's said father, James Connelly, in behalf of this plaintiff, entered into a contract with Joseph Carr, deceased, the grandfather of this plaintiff, in and by which plaintiff's said father, James Connelly, surrendered to said Joseph Carr, deceased, all rights in and to the plaintiff as his daughter, and permitted said Joseph Carr, deceased, to adopt the plaintiff as the daughter of said Joseph Carr, deceased, and to take her as his child, take his name, and have the sole benefit of the plaintiff's society, services and earnings, in consideration for which said Joseph Carr, deceased, agreed with said James Connelly in behalf of the plaintiff that said Joseph Carr, deceased, should give this plaintiff a child's share of his property upon his death, to wit: a one-fourth interest in all the real and personal property which said Joseph Carr, deceased, should thereafter acquire."

It does not appear from the finding that the alleged contract was in writing, and upon the argument in this court the learned counsel for the plaintiff treated it as entirely oral. It must certainly be permissible to look into the record for the history of the transaction and in order to ascertain the true scope and meaning of the finding and then it is very easy to see what took place. The plaintiff's mother had just died and she was a child five years old, very much in need of the care and attention of some relative who had an interest in her future welfare. Her grandfather and grandmother became her natural protectors and assumed towards her the duties of parents. They brought her up and educated her in a manner that was much above their station in life since it appears that both her parents and grandparents were people in very humble circumstances. She became a teacher in the schools and is now married. It is quite likely that her own merits and industry contributed to her success. We are bound to assume that she performed all the duties of a daughter in the household of her grandfather, and at the same time it is quite apparent that she was fortunate in finding so good a home.

The finding of fact described a case or a transaction that must occur almost every day, or at least is a very common event in the domestic relations, but the learned courts below have attributed to the facts found legal consequences that are far reaching and of the most momentous importance. It has been held that from the time that the deceased took this child under the arrangement found he became disabled from transferring or disposing of his property, since all such conveyances and transfers, even to his wife, have been held to be null and void as to the plaintiff. It has been held that the grandfather's will, in which he attempted to dispose of his property for the support and benefit of his widow, is also null and void as to the plaintiff, and generally that the plaintiff by means of this simple transaction, when she was five years old, secured legal rights against her grandfather and his property that overreach and override all future conveyances, transfers, gifts or testamentary dispositions of the same by him. From the time that the grandfather took this child into his house his right of future disposition of his property, which all men generally possess, became limited and restricted. These are the conclusions to be deduced from the judgment in this case. And yet no one has attempted, so far as I can see, to classify the transaction described in the finding among the various methods for the transmission or devolution of property. It certainly is not a testamentary disposition since that must be in writing, executed with all the statutory formalities. It is not a conveyance or transfer *in presenti* of any property whatever. If it had the effect attributed to it by the judgment it was more potential and effective than any testamentary disposition could be, since such dispositions are always ambulatory and subject to revocation. It was not an executory contract for the future conveyance or transfer of any specific property. It could not take effect until the death of the grandfather, and during his life he was not in default with respect to it, and yet this anomalous arrangement was, according to the judgment in this case, effective enough in law to nullify the gifts and conveyances made by the grandfather in his

lifetime to his wife and the provisions of his will that took effect upon his death. The deceased left three children of his own that certainly had as strong a natural claim upon his bounty as the plaintiff, his grandchild, but no one, I think, would claim that had the deceased made the same promise to them that it is found he made to the plaintiff, it would constitute a basis for an action of specific performance against the widow. An adopted grandchild must, therefore, have acquired in some way a greater right in the grandfather's estate than his own children, since in a verbal interview between her father and grandfather, when she was five years old, she acquired one-fourth of all his property.

It is not asserted that the plaintiff's right of action rests upon any distinct principle to be found in the law of property or of wills. It is said that it rests safely upon precedent, but precedents in order to be of any value must be based upon some principle. Actions of this character have now become quite common, and are made by a somewhat loose process of reasoning to take the place of a will or conveyance in favor of the party seeking the relief. There is a line of cases to be found in the books of which *Freeman* v. *Freeman* (43 N. Y. 34) is a fair example and upon the authority of which some more modern precedents have been constructed that it is said are sufficient to support the judgment in this case. The case cited was that of a father who put his son and his family in possession of a farm, and by parol promised the son that in case he went into possession and improved the farm it should be his as long as they lived. The son went into possession and improved the farm. It was held that the son could enforce the specific performance of the promise. It was said in that case that the real ground for the exercise of equitable jurisdiction in such cases either of sale or of gift is to prevent a fraud being practiced upon the parol purchaser or donee, by inducing him to expend his money in improvements upon the faith of the promise, and then depriving him of the benefit of such expenditures, and securing them to the seller or donor. It will be readily seen that there is no

resemblance between that case and the one at bar.    This line of cases was reviewed in the case of *Winne* v. *Winne* (166 N. Y. 263), in which specific performance of a promise to make an adopted child an heir was enforced.    That case, however, differs widely in its facts from the present case. There the agreement was in writing and the deceased never transferred any of her property and died intestate, leaving no father, mother, child or descendant.    The court in that case was careful to state that the decision was based solely upon the findings and the particular facts and circumstances of the case, and that it was not to be regarded as authority for maintaining such an action under different circumstances or upon other proof.    In the case at bar the facts and circumstances are quite different.    In the recent case of *Brantingham* v. *Huff* (174 N. Y. 53) the limitations placed upon the *Winne* case in the opinion were adopted and they should be adopted in this case.

In all the discussion of this case here and below it has been assumed that the finding of fact referred to imports a contract of some kind, but if so, who were the parties?    Was it a contract between a child five years old and her grandfather, or between the latter and his son-in-law, the father of the child?    How could the father bind the child by a verbal arrangement to transfer her care and custody to another?    If this was a contract it certainly was not a mutual one, binding the child and her father as well as the grandfather.    The father and the child could at any time repudiate it and the grandfather had no remedy.    Suppose that the father and child refused to carry out the contract, so called, could the grandfather have specific performance?    The answer to these questions would be quite important as a test of the legal significance of the finding of the learned trial judge.    When the arrangement described in the finding was made, chapter 830 of the Laws of 1873 was in force, which provided for a legal method of adoption by deed or writing under certain prescribed conditions and formalities.    But there is no finding in this case that there was any adoption under that statute, or by any writing whatever.    In order to justify a court of equity to decree

specific performance there must be a contract which in general is mutual in its obligations and its remedy, reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it is made. (*Stokes* v. *Stokes*, 148 N. Y. 708; Pomeroy's Eq. Juris. § 1405.) Whatever the transaction described in the finding in this case may be called, or however classified, it would seem to be clear that it does not possess all or any of the qualities required in order to sustain the judgment.

It will be seen from the terms of the finding itself that the plaintiff's right to any part of her grandfather's property was limited to such as he might "thereafter acquire." There is no finding that the deceased grandfather acquired any property after the date of the alleged agreement. For aught that we know or can know from the findings in the case, all the property of the deceased affected by the judgment was acquired prior to the alleged agreement in question. These and other considerations that might be suggested establish the legal proposition that the conclusions of law in this case that completely sweep away as to the plaintiff all deeds of gift or testamentary dispositions made by her grandfather of his property are not warranted or supported by any facts found.

There is another question in the case that cannot very well be ignored. The burden of proof was upon the plaintiff, and she was bound to establish the facts alleged in the complaint. Her father was the principal witness to prove the facts found and the case rests entirely upon proof of a verbal agreement. The father testified to what he said and what the grandfather said, but in the course of the cross-examination it appeared that the arrangement was reduced to writing and that papers were made. The defendant's counsel then objected to further parol proof and moved to strike out what had been given. These motions appear in the record in various forms, but they were all overruled by the court and exceptions taken to the ruling. Whatever proof the plaintiff gave was of a verbal agreement and the finding which has been considered is the product of these rulings. It would seem to be a plain viola-

tion of one of the most elementary rules of evidence to permit the plaintiff to prove her case by the very vague and inconclusive testimony of her father, consisting of conversations with the grandfather who was dead, so long as it appeared that the transaction was in writing and there was no attempt made to produce the papers, account for their loss or destruction, or to give secondary proof of their contents. The answer of the learned counsel for the plaintiff to this objection is, substantially, that the defendant's counsel omitted to call for the papers. He was under no obligation to do so. The plaintiff's counsel was bound to prove his case by competent evidence, and when it appeared that the transaction was in writing it was incumbent upon him to produce it, or show that it was lost or destroyed. He would then be required to confine the proof to secondary evidence of the contents of the papers.

The judgment should be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., HAIGHT and VANN, JJ., concur; GRAY, BARTLETT and MARTIN, JJ., not voting.

Judgment reversed, etc.