SARAH MIDDLEWORTH, Respondent, *v.* MARY M. ORDWAY,
   Individually and as Administratrix of the Estate of JAMES
   M. ORDWAY, Deceased, et al., Appellants.

1. DECEDENT'S ESTATE — VALIDITY OF CONTRACT AFFECTING DIS-
POSITION THEREOF. There is no law, except that which protects the
right of dower, to prevent a man from making a contract in his lifetime
affecting the disposition of his property after his death, but such a con-
tract should be in writing, or established by disinterested witnesses, and
should be fair and equitable, or a court of equity will not enforce it.

2. PARENT AND CHILD — WHEN PARENT MAY TRANSFER CUSTODY
AND CONTROL OF HIS CHILD TO ANOTHER. A father, unable to provide
for his infant child, may, by a contract in writing, transfer the custody,
control and the right to the services of such child to another, subject to
the right of a court of equity to interfere in the interest of the child.

3. SAME—WHEN CHILD NOT LEGALLY ADOPTED — DECEDENT'S ESTATE
— VALIDITY OF CONTRACT PROVIDING THAT SHE SHOULD HAVE PORTION
OF SUPPOSED FOSTER FATHER'S ESTATE. An instrument in writing
whereby a father, who was the sole surviving parent, transferred to a hus-
band and wife the right to the custody, control and services of his infant
daughter for a limited number of years in consideration of a covenant on
their part to adopt the child and to support, educate and maintain her until
she reached a certain age, and further providing that the child should
remain with them and submit to their government until she became
eighteen years old, "*when* she shall be entitled to her dower right to the
property of the" proposed foster parents "the same as though she were
their own legitimate offspring," is adequately supported by the mutual
promises therein contained. Such contract, duly executed and delivered
by the father and the husband as a complete instrument, is binding upon
them and also upon the child; and, where it has been duly performed by
both father and child, the husband is bound to perform, at least to the
extent within his power. He could not, however, adopt the child without
the consent of his wife, and, where she did not sign the instrument, and it
does not appear that she ever consented to such adoption, or that any order
of adoption was made by the court having such matters in charge, the
child was not legally adopted, but is entitled, nevertheless, as against the
husband and his estate, to the benefits secured to her by the rest of the
contract.

4. SAME — CONSTRUCTION OF CONTRACT — MEANING OF WORD
"DOWER" — ACTION FOR SPECIFIC PERFORMANCE. The contract was
not drawn by one learned in the law and it is obvious that the word
"dower" was not used in its ordinary or technical sense, for, if limited
thereto, it would confer no right upon the child whatever, yet it is
apparent that the parties intended to create some right relating to the

property of the proposed foster parent. In considering such instrument, therefore, in an action brought by the child against the widow, heirs and administratrix of such foster parent to compel specific performance of the contract, the words " her dower right " must be construed in the light of the context, the situation of the parties and their general purpose in making the contract, and as thus construed, and interpreted in connection with the phrase "the same as if she were their (his) own legitimate offspring " which immediately follows, the words in question mean the right of the child to inherit, the same as if she had sprung from the loins of the proposed foster parent, or had been lawfully adopted, and, therefore, the word "dower" as used in the said contract must be construed to mean the right of inheritance that belongs to a legitimate child or to a child lawfully adopted under the law of the state.

5. SAME — USE OF WORD "WHEN" TO MARK CERTAIN DATE — RIGHTS OF FOSTER CHILD. The word "when" as used in the instrument marks the date when the plaintiff, if she kept the covenant made for her by her father and he kept the covenant made in his own behalf, would attain the right to inherit "the same as * * * legitimate offspring," which is upon the death of the parent without a will. If her foster father had died before she became eighteen she would have taken nothing, but as he lived until she reached that age, and died without a will, she takes as an own child, except as against his widow.

6. ACTION FOR SPECIFIC PERFORMANCE OF CONTRACT — ORAL EVIDENCE OF CONVERSATIONS LEADING TO CONTRACT INCOMPETENT — WHEN ADMISSION THEREOF HARMLESS. While the admission, upon the trial of such action, of oral evidence of what was said by the father of the child and the proposed foster father, when they gave the scrivener the instructions which led to the preparation of the contract in question, was erroneous, such evidence being incompetent in the absence of any latent ambiguity in the contract, because when the paper was signed the previous conversation became merged therein and no longer had any existence in law, yet the admission of such evidence was harmless where the trial was before the court without a jury, and the oral contract, which is substantially the same as the written contract, is neither sanctioned nor enforced by the judgment of this court, but the judgment is based upon the written instrument, which is not disputed.

7. SAME — WHEN EVIDENCE OF CIRCUMSTANCES ATTENDING THE EXECUTION OF THE CONTRACT IS COMPETENT. Although the conversations preceding and leading to the contract in question were inadmissible because merged in the contract, the circumstances surrounding the parties when they signed the contract are competent evidence to prove the delivery thereof, and for the purpose of informing the court as to the situation of the parties and the occasion which led to the contract.

*Middleworth* v. *Ordway*, 117 App. Div. 913, affirmed.

(Argued February 28, 1908; decided March 13, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 15, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

This action was brought against the widow, heirs and administratrix of James M. Ordway, deceased, to compel the specific performance of a contract, alleged to have been made between the father of the plaintiff and the said decedent for her benefit.

The trial court found the following facts in substance : On the 25th of November, 1879, the plaintiff was an infant but fifteen months old. Her mother had recently died and her father, George B. Stanton, was a laboring man in straitened circumstances with a large family of young children, and without any one who could properly care for so young a child. At the same time James M. Ordway was a man of mature years in good circumstances and at the height of an active business career. He was married but had no children. He resided with his wife, Mary, in the town of Indian Lake, Hamilton county, at a place remote from the office or residence of a lawyer or of one skilled in legal matters. An instrument was prepared at the request of himself and Mr. Stanton by a magistrate of the neighborhood, who had no technical knowledge, of which the following is a copy :

"This indenture, made this 25th day of November, 1879, Between George B. Stanton of the Town of Long Lake in the County of Hamilton, and State of New York, party of the first part, and James Ordway and his wife, Mary Ordway, of the Town of Indian Lake, in the County of Hamilton, aforesaid, of the second part, witnesseth :

"That the said party of the first part, for, and in consideration of the agreements and stipulations hereafter mentioned doth convey, and by these presents, hath conveyed to the parties of the second part, all the right, title, interest and claim of every name and nature whatsoever, together with all the service, labor and benefit to a certain female child, it being

the youngest child of the said George B. Stanton, by his late wife, Emma Stanton, born at Long Lake, the 12th day of August, 1878, hereafter to be known by the name of Sarah Ordway, to have and to hold the same as the child of the said James and Mary Ordway, parties of the second part, the same as though legitimately their own child, with full power to do by, and for, as they shall deem fit and proper.

"In consideration whereof, the said James M. Ordway and Mary, his wife, does hereby covenant and agree to, and with the said George B. Stanton, party of the first part, to adopt the said Sarah as their own child, to feed, clothe, educate and provide proper care and nourishing, when sick, as their ability shall allow, provided always the said Sarah is to remain with the said James Ordway and Mary, his wife, and submit to their government, until she shall arrive at the age of eighteen years, when she shall be entitled to her dower right to the property of the said James and Mary Ordway, the same as though she were their own legitimate offspring, and the said George B. Stanton, for himself, hereby relinquishes all further claim, or control to, or in the said Sarah Ordway, either in law or equity.

"In witness whereof, what is above agreed, *to which we are each bound*, we also bind our executors, administrators and assigns, firmly by these presents, to their full performance.

"In testimony whereof, we sign our names, sealed with our seals, this 25th day of November, 1879.

"GEO. B. STANTON,   [L. S.]<br>
"JAMES M. ORDWAY. ' [L. S.]

"Signed and sealed in presence of
"STEPHEN D. LAMOS."

This instrument was signed, sealed and acknowledged by Mr. Stanton, and although signed and sealed by Mr. Ordway was not acknowledged by him, and it was neither signed nor acknowledged by Mrs. Ordway. It was executed in duplicate, one being delivered to each party, the name of Mrs. Ordway, although appearing in the instrument, apparently being treated as if it had not been written therein. The

plaintiff's father duly performed all the conditions of this contract on his part and surrendered the custody of the plaintiff to Mr. Ordway. Thenceforward she lived in his family and was maintained, treated and educated as his child and she believed that she was his child until she was fourteen years of age, when she first saw her own father to know him. Her name was Hannah Stanton, but after the date of the contract she went by the name of Sarah Ordway. She discharged the duties of a daughter to the said Ordway and wife and lived continually with them as their daughter until the time of her marriage. After that event, Mr. Ordway provided her with a house in which she lived with his consent, but she continued nevertheless to discharge her duties as a daughter to him and his wife and was treated by them as a daughter up to the time of his death. She performed all the conditions of said contract on her part, except that she did not, after her marriage, wholly submit to their government until she arrived at the age of eighteen years, but the trial court found that she substantially performed in part and that full performance thereof was waived by Mr. and Mrs. Ordway. 'She never saw the contract until after the death of Mr. Ordway, which took place on the second of March, 1905. He died intestate, leaving him surviving Mary Ordway, his widow, and several brothers and sisters, but no descendants. His personal property was worth at least $12,000 and he left real estate worth $16,000.

The trial court also found that an oral contract was made on the 25th of November, 1879, between Mr. Ordway and Mr. Stanton, whereby the latter agreed to surrender the plaintiff to the former with "all claims or rights of every name and nature together with the tuition and custody which he had over said plaintiff by reason of being her father;" that in consideration of said agreement Mr. Ordway "agreed to take the plaintiff and to adopt her as his child, to rear, educate and maintain her and to treat her as a member of his own family and as a daughter in all respects and provided she remained with the said James M. Ordway and his wife, and

submitted to their government until she reached the age of eighteen years, to make this plaintiff as his heir and to give her the same interest which as a daughter she would have in whatever property he owned or might have at the time of his decease."

The trial judge found as a conclusion of law that by virtue of both the oral and written agreements " George B. Stanton parted with the tuition, care, custody and control of the plaintiff and the same became vested in James M. Ordway, and he became thereby bound to carry out and perform all the conditions and covenants in said contract on his part to be performed, upon substantial performance of the contract by the plaintiff." He found in substance, both as matter of fact and law, that " by the use of the phrase in the written contract, ' when she shall be entitled to her dower right to the property of the said James and Mary Ordway, the same as though she were their own legitimate offspring,' George B. Stanton and James M. Ordway intended to express an agreement whereby the plaintiff would have such rights as a daughter would have by the laws of descents and the Statute of Distribution if said James M. Ordway died intestate."

Judgment was ordered in favor of the plaintiff " for the specific performance of the contract as against the collateral heirs and next of kin of James M. Ordway, but not as against his widow; that the plaintiff should be adjudged the owner in fee simple of the lands of which James M. Ordway died seized and possessed, subject to the dower rights of the said Mary M. Ordway; that the other defendants be directed to execute and deliver to the plaintiff a conveyance of said lands as heirs at law of said James M. Ordway, deceased; that it should be further adjudged that the plaintiff is entitled to one-half of the personal property belonging to Mr. Ordway at his death after the payment of his debts and the expenses of administration, and requiring Mary M. Ordway as his administratrix to account and pay over to the plaintiff such share thereof."

The defendants appealed from the judgment entered accordingly, but the same was in all things unanimously affirmed by

the Appellate Division. All of the defendants appealed to this court.

*Henry W. Williams* for appellants. The cause of action to recover on the alleged oral contract should be dismissed. (*Mahaney* v. *Carr*, 175 N. Y. 454; *Brantingham* v. *Huff*, 174 N. Y. 53; *Mead* v. *Dunlevie*, 174 N. Y. 108; *Dady* v. *O'Rourke*, 172 N. Y. 447; *Pattat* v. *Pattat*, 93 App. Div. 102; *Banta* v. *Banta*, 103 App. Div. 172.) The parol evidence was not admissible on any theory. If an ambiguity existed it was patent. Parol evidence is not competent to remove it and the agreement is void for uncertainty. (*Dady* v. *O'Rourke*, 172 N. Y. 447; *Collender* v. *Dinsmore*, 55 N. Y. 200; *Mead* v. *Dunlevie*, 174 N. Y. 108; *V. P. Co.* v. *W., etc., Co.*, 72 App. Div. 121; *Eighmie* v. *Taylor*, 98 N. Y. 288; *J. B. College* v. *Allen*, 172 N. Y. 291; *Thomas* v. *Scutt*, 127 N. Y. 133; *M. P. Co.* v. *Moore*, 104 N. Y. 680; *Trustees of Southampton* v. *Jessup*, 173 N. Y. 84.) Neither an agreement to treat a child as a person would treat his own child, nor an agreement to make a child an heir and give it the same interest as a child, confers any interest in the property of the foster parent and permits no right of action. (*Hanly* v. *Hanly*, 105 App. Div. 335; *Brantingham* v. *Huff*, 174 N. Y. 53; *Hamlin* v. *Stevens*, 177 N. Y. 39.)

*J. A. Kellogg* and *Erskine C. Rodgers* for respondent. Both the oral and written contracts were enforceable in equity. (*Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279; *Parsell* v. *Stryker*, 41 N. Y. 480; *Gall* v. *Gall*, 64 Hun, 600; 138 N. Y. 675; *Winne* v. *Winne*, 166 N. Y. 263; *Healy* v. *Healy*, 55 App. Div. 315; 166 N. Y. 624; *Bouton* v. *Welch*, 48 App. Div. 378; 170 N. Y. 554; *Kenyon* v. *Youlen*, 53 Hun, 591; *Godine* v. *Kidd*, 64 Hun, 585; *Colby* v. *Colby*, 81 Hun, 221; *Gates* v. *Gates*, 34 App. Div. 608; *Hamlin* v. *Stevens*, 59 App. Div. 522; *Kine* v. *Farrell*, 71 App. Div. 219.) If the contract must be interpreted without the assistance of parol evidence, the only sensible interpretation to be given to the word " dower " is to read it as meaning a right of inherit-

ance and distribution. (*McSorley* v. *Hughes*, 12 N. Y. Supp. 179; *Forrest* v. *Forrest*, 25 N. Y. 110.) The parol evidence was clearly admissible to explain the meaning of the word "dower" if ambiguity existed; to establish the oral contract as pleaded, and to show that the contract was completed. (*N. Y. L. Ins. Co.* v. *Hoyt*, 161 N. Y. 1; *Decker* v. *Furniss*, 14 N. Y. 622; *Blossom* v. *Griffin*, 13 N. Y. 574; *Springsteen* v. *Samson*, 32 N. Y. 703; *Matter of Sinzeheimer*, 5 Dem. 321; *Emmett* v. *Penoyer*, 151 N. Y. 569; *Collender* v. *Dinsmore*, 55 N. Y. 200; Chase Stephen's Digest, 230; *Cromer* v. *Pinckney*, 3 Barb. Ch. 466; *Daugherty* v. *Rogers*, 119 Ind. 254; *De Kay* v. *Irving*, 5 Den. 646.)

VANN, J. The judgment now before us for review enforces a contract relating to the right of inheritance so as to take away from the natural heirs of a dead man a large portion of his property and confer it upon a stranger to his blood. The contract, however, in this case differs from those made with a similar purpose which we have recently condemned so severely, in that it was in writing and the writing was proved beyond question and without dispute. No claim of fabrication or fraud is made by any one. There is no law, except that which protects the right of dower, to prevent a man from making a contract in his lifetime affecting the disposition of his property after his death, but as we have repeatedly held such contracts should be in writing, or established by disinterested witnesses, and should be fair and equitable or a court of equity will not enforce them. (*Hamlin* v. *Stevens*, 177 N. Y. 39; *Rosseau* v. *Rouss*, 180 N. Y. 116; *Roberge* v. *Bonner*, 185 N. Y. 265; *Holt* v. *Tuite*, 188 N. Y. 17, 22.) A father unable to provide for his infant child, may transfer the custody, control and the right to the services thereof to another, subject to the right of a court of equity to interfere in the interest of the child. The mutual promises, therefore, of the parties to the instrument before us furnished an adequate consideration to support it.

In pronouncing judgment in this case we shall wholly dis-

regard the parol contract found by the trial court, and confine our attention exclusively to the written agreement, without resorting to the oral evidence for any purpose except to discover the situation and conduct of the parties when they wrote what we are now called upon to construe. *(Thomas* v. *Scutt,* 127 N. Y. 133, 141.)

By that agreement the father, who was the sole surviving parent, transferred the right to the custody, control and services of his infant daughter for a limited number of years. The consideration named for the transfer is a covenant to adopt the child and to support, educate and maintain her until she reached a certain age. The contract further provided that the child should remain with Ordway and wife, and submit to their government until she became eighteen years old, "when," to repeat the words of the parties, "she shall be entitled to her dower right to the property of the said James and Mary Ordway, the same as though she were their own legitimate offspring."

While the contract is not binding upon Mrs. Ordway because she did not sign it, since it was executed and delivered by Mr. Ordway and Mr. Stanton as a complete instrument, it was binding upon them and also upon the child, for it was authorized by law. It was duly performed by both father and daughter and Mr. Ordway was bound to perform, at least to the extent within his power. He could not adopt the child without the consent of his wife and it does not appear that she ever consented. (L. 1873, ch. 830, § 3; L. 1896, ch. 272, § 61.) At all events no order of adoption was made by the court having such matters in charge, and the child was not legally adopted. The rest of the contract was kept by Mr. Ordway as long as he lived, but upon his death the question arose as to what the parties meant by the clause quoted above. The difficulty in learning the meaning springs from the word "dower," as used in the covenant of Mr. Ordway. The contract was not drawn by one learned in law and obviously that word was not used in its ordinary sense, for even an own daughter can have no dower right in the prop-

erty of her father. Dower ordinarily means the interest which the law gives to a widow in the lands of her deceased husband and it can have no application to the relation of parent and child. It is frequently used to express an inchoate right, which does not ripen until death. If limited to its technical meaning it would confer no right whatever, yet the parties intended that some right should be created thereby and that right related to the property of Mr. Ordway. Under these circumstances we must search the context and look at the situation of the contracting parties for a solution of the question.

What subject were they dealing with? Clearly not with the right of a widow, but with the right of a child. The rights of the natural father were being transferred to a foster father and provision was being made for the welfare of the foster child. Her support and education had been provided for in the forepart of the instrument, and the parties evidently intended to make some provision for her with reference to the property of Mr. Ordway. Thenceforward she was to sustain to him the relation of a daughter and he was to sustain to her the relation of a father, "the same as though legitimately" his "own child." This suggests the nature of the provision intended, but the subject is not left to suggestion merely, for a phrase immediately follows which shows what the parties meant. "Her dower right to the property" of Mr. Ordway was to be "the same as though she were their (his) own legitimate offspring." Thus the right conferred is first defined by the word "dower" used as an adjective, which, as we have seen, in its technical sense is without practical meaning, and it is also measured by the phrase just quoted, which is, in effect, a definition by comparison. "Her dower right," therefore, was to be such a right "to," not in, the property of Mr. Ordway "as if she were his own legitimate offspring." What is that right? Simply the right of inheritance, which a child has according to the laws of the state, provided the father dies intestate. A father may make a will and disinherit his child, but if one is not made the law takes

its course and his child succeeds to his property. Mr. Ordway could have made a will and left the plaintiff nothing, for the contract did not prevent it. He could have made a will and left her something, the same as if the agreement had not been entered into, but he was under no obligation to make a will, for he had not agreed to. If he made no will, however, his agreement, as we read it, was that his foster child should have the same right of inheriting his property as if she were his own child. Thus the right which Mr. Ordway intended to confer upon the plaintiff was that of a legitimate child to inherit from him if he died without a will, not an exclusive right, but the right to take her aliquot part if he should have children born to him. She takes, not by the law of succession, but by contract, to the same extent that a natural child would take according to the law of succession. The context, the situation of the parties and their general purpose in making the contract show that the words "her dower right" mean the right of the plaintiff to inherit the same as if she had sprung from his loins or had been lawfully adopted, as he agreed she should be. Whether we ignore the word "dower" altogether as meaningless, or give it the definition that the parties gave it by using the phrase which they regarded as equivalent in meaning, the same result follows. They were creating the relation of parent and child by contract between persons who did not sustain that relation to each other by nature, and the foster father agreed that his foster child should have "her" right in his property, which he defined by saying that it should be the same as though she were his own legitimate offspring. Without the word "dower" the meaning would be clear beyond question, and with that word as interpreted by the phrase which defines it, when both are read in the light of surrounding circumstances, the meaning is reasonably clear. Every word the parties wrote, except the word "dower," tends toward one conclusion, and effect must be given to the obvious intention, notwithstanding that word. We must either disregard the language of the parties altogether, and thus subvert an important part

of their contract, or read it in view of the status which it was the object of the contract to create, and construe it to mean the right of inheritance that belongs to a legitimate child as well as to a lawfully adopted child, by the law of the state.

The word " when," as used in the sentence quoted, causes no embarrassment, as that marks the date when the plaintiff, if she kept the covenant made for her by her father and he kept the covenant made in his own behalf, would attain the right to inherit, " the same as  *  *  *  legitimate offspring," which is upon the death of the parent without a will.    If Mr. Ordway had died before she became eighteen, she would have taken nothing, but as he lived until she reached that age, she takes as an own child, except, as the trial court held, as against his widow.    Since Mrs. Ordway did not sign the contract the court was of the opinion that it had no effect as against her, and, hence, the judgment rendered gives her the same rights in the property of her husband as if the contract had not been made, or one-half of the personal property instead of one-third.    No complaint is made by any one as to this feature of the judgment.

Upon the trial the court received, subject to objection and exception, oral evidence of what was said by Stanton and Ordway when they gave the scrivener instructions which led to the preparation of the instrument in question.    That evidence was incompetent, because when the paper was signed the previous conversation became merged therein and no longer had any existence in law.  (*Mahaney* v. *Carr*, 175 N. Y. 454, 461.)  There was no latent ambiguity to open the door to proof of what the parties said.    The evidence, however, did no harm, because the trial was before the court without a jury, and the oral contract, which had precisely the same meaning as the written contract when properly construed, is neither sanctioned nor enforced by our judgment.    We decide the case on the face of the written instrument, which was not disputed, and which is the only contract that the law recognizes as having been made.    While the conversations were inadmissible for the reason given, the

circumstances surrounding the parties when they signed the instrument were properly shown to prove delivery (*Chouteau* v. *Suydam*, 21 N. Y. 179) and for the purpose of enabling the court to see whether their situation reflected light upon the words used in reducing their agreement to writing. (*Thomas* v. *Scutt, supra.*) In other words, while the law excludes parol evidence of their expressed intention, it receives evidence to show their situation and the occasion which led to the contract.

While we find error in the record, we find none calling for a reversal, and, therefore, the judgment appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.