(153 App. Div. 572.)

## APTHORP v. THURSTON.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—SUPPORT OF DECEASED—EVIDENCE.

   Claims against a decedent's estate for support furnished him in his lifetime must be established by evidence clear and convincing, and the contract must be definite and certain.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

2. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—SUPPORT OF DECEASED—EVIDENCE.

   A contract for the support of decedent, in consideration of his turning over all his property on his death, held, under evidence consisting of a letter from decedent and declarations by her, not to be sufficiently certain to establish the claim.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

Appeal from Trial Term, Chautauqua County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Richard Apthorp, as administrator, against Alfred J. Thurston, as administrator. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Joseph C. White, of Dunkirk, for appellant.
Clinton O. Tarbox, of Fredonia, for respondent.

KRUSE, J. Mary Ann Piper, the defendant's intestate, left an estate, consisting of personal property, amounting to about $5,000. The exact amount thereof at the time of the trial, after deducting the expenses of administration and other claims against the estate, aside from the claim in suit, was $3,008.24. This entire amount, or an amount equal thereto, is claimed by the plaintiff, and has been awarded to him by the verdict of the jury and judgment entered thereon, as compensation for support and maintenance of defendant's intestate during the last three or four months of her life, while she lived in the family of plaintiff's intestate. The claim is based upon an express contract alleged to have been made by Mrs. Piper, the defendant's intestate, with Mrs. Apthorp, her niece, the plaintiff's intestate, and will hereafter be referred to more fully and at length.

The defendant appeals from the judgment so entered and the order refusing to set aside the verdict and denying his motion for a new trial. The defendant also challenges by appeal the order awarding costs against the defendant personally; but the view we entertain of the case upon the merits makes it unnecessary to consider the specific point urged against the order.

Mary Ann Piper was 88 or 89 years old at the time of her death. She left no descendants. Her nearest blood relatives are nephews and nieces. For many years, up to within three or four months of her death, she had made her home in the state of Illinois. Her nephew, Alfred J. Thurston, the defendant, had charge of her affairs for years before her death, and he was appointed the administrator of her estate. He resides in the state of Illinois. Some of the time she made her home with him; at other times she lived by herself or with others. In May or June, 1905, she left the state of Illinois and went to Fredonia, in this state, where Mrs. Apthorp resided, and she lived in the family of Mrs. Apthorp from that time until her death.

It is contended on behalf of the plaintiff that she intended to and did make her permanent home with Mrs. Apthorp, and that she came there and stayed there under a definite contract as set forth in the complaint, whereby Mrs. Apthorp should provide a home and care for and maintain Mrs. Piper at the home of the former in Fredonia, so long as she, Mrs. Piper, should live; that Mrs. Piper promised and agreed to turn over, deliver, and pay to Mrs. Apthorp, upon the death of Mrs. Piper, all her estate, both real and personal, to be and belong to Mrs. Apthorp, absolutely and forever. This alleged contract is founded upon a letter, supplemented by declarations claimed to have been made by Mrs. Piper to various persons. The letter is as follows:

"Pawpaw, Illinois, April 13, '05.

"Dear Niece: I thank you very much for your kind offer and I will accept it. I expect to be there as soon as the weather and my health will permit. What I don't use of my things while I live will be yours and your family's after I am gone, and I do not expect to live a great while longer. My health is better at present than it was this winter, so that encourages me very much. All of Alfred's folks are very well at present, as is the folks here. As·I have nothing more to write and will tell you the news when I get there, I will close. Hoping this will find you all well.

"Your affectionate aunt,                    Mary Ann Piper."

The letter, including the signature of Mrs. Piper, was written by Laura Shay Collins, who testified that she wrote it at the request of Mrs. Piper. The letter was not·produced; but I will assume that its loss was properly accounted for, so as to permit proof of its contents by·receiving in evidence a copy thereof.

When Mrs. Piper left Illinois for Fredonia, she took with her two trunks and two boxes of bedding·and clothes, her watch and other jewelry, and $300 or more in money, as the proof seems to show, none of which has come into the possession of the defendant administrator. The rest of her property seems to have been in money or securities in charge of the defendant, and for which he has accounted. The letter of April 13, 1905, seems to have been written in response to an offer made by Mrs. Apthorp. The offer which Mrs. Apthorp had made, according to the declaration of Mrs. Piper, as testified to by Laura Shay Collins, was that Mrs. Piper could have a home with her as long as she lived.

I think the letter is not sufficient to make out a contract, definite and certain, of the character alleged in the complaint, or of such a nature as will uphold this verdict. There is nothing to show either that Mrs. Piper ever told Mrs. Apthorp, or that Mrs. Apthorp knew, what property Mrs. Piper had. It is quite as consistent to assume that Mrs. Piper referred to the things which she would bring to Fredonia with her as to say that it included all of her moneys and securities, of which her nephew had charge. Nor do I think that the declarations testified to by the witnesses for the plaintiff as having been made by Mrs. Piper aid the plaintiff to the extent of establishing the contract, as the plaintiff claims.

Before leaving Illinois, Mrs. Piper stated to Laura Shay Collins that she wanted Mary (that is, Mary L. Apthorp, the plaintiff's intestate) to have her property if she stayed with her as long as she lived, after Alfred Thurston was well paid, but that she would not stay if she did not like it. And she made the same statement in substance to two other witnesses before she left for Fredonia. After reaching Fredonia, she stated to her attending physician, according to his testimony, that if everything was satisfactory she expected to stay there; and while he also testified that she stated further that she calculated to give her property to Mrs. Apthorp, if she lived there and everything was satisfactory, he would not swear positively that she said anything to him about her property or what she was going to do with it, although she did say she expected to live there with Mrs. Apthorp and was to compensate her for her living while she was there. To another witness she stated, after reaching Fredonia, that she was going to make her home there the rest of her days, and that the rest of her

property would go to Mrs. Apthorp and her husband. The witness states that she is sure that part of the property was to go to Richard Apthorp, the husband. Two daughters-in-law of Mrs. Apthorp testified that they heard Mrs. Piper say that Mrs. Apthorp should have the property; that she (Mrs. Piper) had things fixed so she (Mrs. Apthorp) could have it (as one of them states); that everything was all right; that she had a letter.

Witnesses were called by the defense, who testified to statements made by Mrs. Piper just before she left for Fredonia, which indicate that she was going there merely on a visit, and, further, that she did not intend to part with any of her property so long as she lived. There was also evidence of declarations made by Mrs. Apthorp that she had been fully and well paid, although evidence was given on the plaintiff's behalf which made that question one of fact.

As has been seen, the complaint alleges the measure of compensation to be all the property, both real and personal, of Mary Ann Piper, to be turned over and delivered to Mary L. Apthorp upon the death of Mary Ann Piper. The claim as presented does not seem to be quite as broad; only the net amount of the estate is claimed. But the letter itself is too indefinite to afford a basis for either claim. It is not only indefinite as to the property, but as to the persons, and the declarations testified to by the plaintiff's witnesses as having been made by the defendant's intestate are equally uncertain and indefinite in that regard.

[1] The rule is now well established that claims of this character must be established by evidence clear and convincing, and the contract must be definite and certain. The rule laid down in Hamlin v. Stevens, 177 N. Y. 39, 69 N. E. 118, has been repeatedly reiterated and applied, and we have quite recently had occasion to examine cases and found them lacking in essentials to sustain a recovery when tested by this rule. Hungerford v. Snow, 129 App. Div. 816, 114 N. Y. Supp. 127; Townsend v. Perry, 146 App. Div. 225, 130 N. Y. Supp. 951. See, also, Middleworth v. Ordway, 191 N. Y. 404, 84 N. E. 291; Taylor v. Higgs, 202 N. Y. 65, 95 N. E. 30, reversing 136 App. Div. 906, 119 N. Y. Supp. 1146; O'Brien v. Foley, 150 App. Div. 257, 134 N. Y. Supp. 825.

[2] I think the letter and these declarations, even if they are given the utmost latitude, fall short of establishing the contract upon which this claim is based and the verdict in this case is founded. It is unnecessary to discuss the other questions which have been argued upon this appeal, for the views expressed necessarily lead to a reversal of the judgment and order denying the defendant's motion for a new trial. The order awarding costs against the defendant personally necessarily falls with the reversal of the judgment and the granting of a new trial.

The judgment and orders should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment and order denying motion for new trial reversed, and new trial granted, with costs to the appellant to abide event, upon the ground that the finding of the jury that the contract alleged in the complaint was made, is contrary to law, and contrary to and against the weight of the evidence. All concur.