HAROLD M. LEVENSON, Plaintiff, v. KATIE P. G. MAYEROWITZ et al., as Administrators of the Estate of ESTHER R. LEVENSON, Deceased, et al., Defendants.

Supreme Court, Queens County, April 30, 1943.

*Harry Goodman* for defendants.

*Theodore Berkman* for plaintiff.

CUFF, J. Motion by defendants to dismiss the complaint because it fails to state a cause of action. The complaint alleges that on November 12, 1918, a Mr. and Mrs. Levenson agreed with plaintiff's uncle that upon his surrendering forever all of his rights " over plaintiff " who was a four-year-old orphan, they would adopt plaintiff as their child, rear, educate, maintain and treat him as if he were their own son, regard him as an heir and give him the same interest as a son would inherit pursuant to the Statute of Distribution in whatever property they possessed at death; that in order to carry out the adoption feature of the agreement, after the plaintiff had been physically delivered to the Levensons, the uncle obtained letters of guardianship issued by the Surrogate's Court, New York County, on January 30, 1919, and on July 22, 1920, executed his consent to the adoption. (Evidently adoption proceedings were not concluded, if ever commenced.) The complaint continues: Plaintiff lived with the Levensons as their son, without knowing that he was not until he reached twenty-one years of age; that he married but never varied his relationship to the Levensons; that Mr. Levenson died April 11, 1942, and Mrs. Levenson on February 20, 1943, both intestate, leaving a substantial estate and her

father as the only heir or next of kin; that letters of administration were issued to defendants; and that plaintiff and his uncle performed their part of the contract.

This suit seeks specific performance of the contract and a judgment awarding to plaintiff all of the property in the estates of the Levensons.

In *Ide* v. *Brown* (178 N. Y. 26) it was held that a legal guardian had no power to make a contract of this kind. Plaintiff claims a distinction in that the uncle stood *in loco parentis* as well as statutory guardian; he was a natural guardian. O'BRIEN, J., in the above case wrote vigorously against enforcing such agreements, pointing out that their recognition nullified wills, that giving them effect was contrary to public policy, opened the door to fraud (although he did not employ that term) and produced instruments of inequity which deprived the foster parent or one in that position of the free disposition of his property, and the natural objects of his bounty of their just deserts. He ridiculed all of the arguments urging the validity of such pacts. He based his decision on the ground that the judgment was not sustained by the findings of the trial court. He made no mention of lack of power of a legal guardian, which was the basis of the prevailing reasoning. In that case two judges concurred in the majority opinion to reverse. There was a concurring separate memorandum by another, and one judge agreed with the opinion of O'BRIEN, J., which also was to reverse, while another member of the court dissented; one was recorded as not voting. The case was decided in March, 1904. In June, 1903, a similar case had been before the court wherein they reversed the judgment and ordered a new trial. O'BRIEN, J., wrote in the same disapproving strain that such contracts are dangerous instrumentalities, the entire court subscribing to the opinion (*Mahaney* v. *Carr*, 175 N. Y. 454). In March, 1908, the court considered a similar contract but this time, unlike the others, there was a supporting writing and a judgment for plaintiff was sustained. The court remarked: "The contract, however, in this case differs from those made with a similar purpose which we have recently condemned so severely, in that it was in writing and the writing was proved beyond question and without dispute. No claim of fabrication or fraud is made by anyone." (*Middleworth* v. *Ordway*, 191 N. Y. 404, 411; O'BRIEN, J., was not a member of the court at the time.) In that case the court stated, citing cases, that there was no legal prohibition, except as to dower, against a man's making a contract providing for the disposition of his property after death, but that the agreement should be written or established by disinterested witnesses

(p. 411). Contracts of that kind made since April 29, 1933, must be in writing. (Personal Property Law, § 31, amd. L. 1933, ch. 616.)

There is no holding by the Court of Appeals that a plaintiff may not sue to enforce an oral contract of the kind in suit. (*Middleworth* v. *Ordway*, 49 Misc. 74, opinion by SPENCER, J., affd. without opinion 117 App. Div. 913, affd. 191 N. Y. 404.) Plaintiff relies strongly upon *Middleworth* v. *Ordway* (*supra*), while defendants urge the *Ide* and *Mahaney* cases. With the law in the State defined, the case of *Gavin* v. *Aitken* (258 N. Y. 595) was adjudicated in February, 1932. In that case the plaintiff's parents had died and at the time she was in the lawful custody of her aunt, who surrendered her to an orphanage. When plaintiff was eight years old (June, 1893) the orphanage entered into an agreement with a Mr. and Mrs. Driver, whereby, in consideration of the orphanage's "turning over the plaintiff herein to the said [Drivers] and surrendering the custody and control to them of the plaintiff herein * * * they would legally adopt plaintiff herein, would treat her as their own child, and that both during their lifetime and upon their death or the death of either of them, plaintiff would have and enjoy all the rights of a child of said foster parents" (Record on Appeal, Complaint, par. III). The plaintiff resided with the Drivers during the rest of their lives in the mutual relationship of parent and child (Record on Appeal, Complaint, par. V). The reason for the suit was that no provision was made for plaintiff in the will of Mrs. Driver, Mr. Driver having died previously intestate. That complaint parallels the one at bar, even to the relationship to plaintiff of the natural guardian, the aunt. (The orphanage derived its powers and rights through and had no more than the aunt.) A motion was made by plaintiff to strike out certain defenses, which was denied by Special Term without opinion. The Appellate Division affirmed the order (223 App. Div. 828) "on the ground that, the complaint being insufficient, the defenses are deemed good enough for a bad complaint. Since the complaint states no cause of action, the motion to dismiss should be granted." The Court of Appeals wrote no opinion but stated: "Judgment reversed, with costs in the Appellate Division and in this court. (See *Middleworth* v. *Ordway*, 191 N. Y. 404; *Ansley* v. *Ansley*, 154 Ga. 357)." That decision rendered with all the cases cited herein and others before the court in the briefs reinstating the complaint which the Appellate Division had dismissed is a pronouncement that a suit may be brought upon an oral contract of the kind which is the subject of this action. Motion to dismiss denied.