HEATH, Appellant, vs. CUPPEL, Administratrix, Respondent.

*March 15—April 11, 1916.*

*Infants: Contract to adopt: Specific performance: Lost contract: Evidence: Sufficiency.*

1. To warrant enforcement of specific performance of a contract of adoption where the writing alleged to have contained the contract is lost, the evidence to establish it must be clear, satisfactory, and convincing.
2. In such cases the facts must not only be consistent with performance of such a contract, but must also be such that they cannot reasonably be harmonized with any other theory.
3. A letter written by one C., after marriage with plaintiff's mother, to a boarding-house keeper with whom plaintiff, then ten years old, was boarding, stating that the mother would shortly call for him to bring him to C.'s home and that C. would adopt him as his own son, was no more than a declaration of an intention to adopt the plaintiff; and the facts that plaintiff's mother afterwards brought him to their home, that he was received and treated by C. as a son, and that he lived there until he attained his majority, do not establish a contract of adoption, in the absence of any direct proof that such a contract was in fact made between C. and plaintiff's mother, who was the only person who could contract for him in the matter.
4. The facts above stated being entirely consistent with the idea that plaintiff became and remained a member of C.'s household as a stepson, and the conduct of all the parties during his residence there and afterwards up to the time of C.'s death being in harmony with that idea and tending strongly to disprove the existence of a contract for his adoption, an action to enforce specific performance of such a contract was properly dismissed.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

The action was brought for a specific performance of an

alleged agreement of adoption of the plaintiff by Charles
Cuppel, deceased, and to enforce plaintiff's rights in the es-
tate of Charles Cuppel, deceased, under such agreement. .

The plaintiff was born in 1860 near Tilton, New Hamp-
shire. In July, 1866, his mother married Charles Cuppel,
deceased, and thereafter resided with him as his wife in the
county of Milwaukee. In July, 1870, the deceased wrote to
one Mrs. Ames, in New Hampshire, a boarding-house keeper
with whom plaintiff was living, stating that the plaintiff's
mother would call for him to bring him to Milwaukee and
that the deceased would adopt plaintiff as his son. This let-
ter has been lost or destroyed. Plaintiff's mother called for
plaintiff in New Hampshire and brought him to Milwaukee
in 1870. Plaintiff took the name of Willie Cuppel (although
he was sometimes called *Heath*) and lived at the home of de-
ceased and wife in Milwaukee as one of the family. The de-
ceased supported the plaintiff and sent him to school until he
was seventeen years of age. The family then moved to a
farm and conducted a milk business and plaintiff worked on
the farm and delivered milk. Plaintiff and the deceased did
not get along well together and their relations became strained
to a degree that when plaintiff was twenty-two years of age
he left the Cuppel home because of serious differences with
the deceased. When plaintiff finally departed for the West
he dropped the name of Cuppel and was known as *William
Heath*. He remained in the West for several years and mar-
ried during this time. Cuppel knew nothing of his where-
abouts nor of his marriage. In 1894 the plaintiff lost his
home and property in the West through a fire, and with finan-
cial aid from the deceased he returned to the home of the
Cuppels in Milwaukee county with his family. The de-
ceased furnished a house for him free of charge and also fur-
nished the necessaries to plaintiff's family and paid plaintiff
some money for his services. In 1896 plaintiff and the de-
ceased had a disagreement involving the marriage of Charles
Cuppel, Jr., a young man whom the deceased had taken as a

foundling and brought up as a member of his family.     Plaintiff left the farm and never returned to it again and thereafter saw the deceased only once for about an hour at decedent's office; nor did he return at the time of his mother's death in 1901.

In 1903 the deceased married the defendant, *Agnes Cuppel,* and he died in April, 1911.     The deceased owned real estate at the time of his death appraised at $32,700 with the exception of the homestead.     The evidence tends to show that the homestead has a market value of $65,000.     He also had $11,502.36 worth of personal property.     The estate was duly probated and the real estate assigned to his widow as his heir. Due publication of notice as to creditors was given.     Plaintiff attempted to file a claim against the estate for services, but it was not filed within the time fixed for filing claims against the estate and hence was disallowed by the court.

The trial court found as facts: "That about the month of July, 1870, said Cuppel [deceased] wrote a letter to Mrs. Ames, the boarding-house keeper with whom the plaintiff was boarding in New Hampshire, stating that his mother would shortly call for him to bring him to Milwaukee and that said Cuppel would adopt the plaintiff as his own son; that said letter has been lost or destroyed; that all of plaintiff's rights against Cuppel are based on this letter;" also that "when plaintiff lived at the Cuppel home he relied on Cuppel's letter and expected to be adopted, but plaintiff knew from and after he left Milwaukee and went West, from the relations existing between him and Charles Cuppel and from other facts and circumstances connected with his residence with Charles Cuppel, that said Cuppel would not adopt him as a son."

The court held that plaintiff had established no ground for a specific performance of a contract of adoption and entered judgment dismissing the complaint.     From such judgment this appeal is taken.

*James F. Dougherty,* attorney, and *Charles E. Hammersley*

and *F. R. Bentley,* of counsel, contended, *inter alia,* that a written or oral obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, will be enforced in equity upon the death of the obligor by decreeing the child entitled as a child to a child's share in the property of the obligor.   1 Cyc. 936; 1 Corp. Jur. §§ 17–19, 21, pp. 1376–1378.   The following are examples of cases where the court has held that a written contract to adopt, though falling short of the statutory requirements, will be enforced: *Burns v. Smith,* 21 Mont. 251, 53 Pac. 742; *Chehak v. Battles,* 133 Iowa, 107, 110 N. W. 330; *Healey v. Simpson,* 113 Mo. 340, 20 S. W. 881; *Sharkey v. McDermott,* 91 Mo. 647, 4 S. W. 107; *Herrick's Estate,* 124 Minn. 85, 144 N. W. 455; *Middleworth v. Ordway,* 191 N. Y. 404, 84 N. E. 291; *Furman v. Craine,* 18 Cal. App. 41, 121 Pac. 1007; *Winne v. Winne,* 166 N. Y. 263, 59 N. E. 832; *Anderson v. Blakesly,* 155 Iowa, 430, 136 N. W. 210; *Horton v. Troll,* 183 Mo. App. 677, 167 S. W. 1081.   The following are cases where oral contracts to adopt have been sustained and the adopted child given a child's share in the estate of the deceased: *Dilger v. Estate of McQuade,* 158 Wis. 328, 148 N. W. 1085; *Lynn v. Hockaday,* 162 Mo. 111, 61 S. W. 885; *Godine v. Kidd,* 64 Hun, 585, 19 N. Y. Supp. 335; *Crawford v. Wilson,* 139 Ga. 654, 78 S. E. 30; *Thomas v. Malone,* 142 Mo. App. 193, 126 S. W. 522; *Hespen v. Wendeln,* 85 Neb. 172, 122 N. W. 852; *Kofka v. Rosicky,* 41 Neb. 328, 59 N. W. 788; *Peterson v. Bauer,* 83 Neb. 405, 119 N. W. 764; *Brasch v. Reeves,* 124 Minn. 114, 144 N. W. 744.   See, also, *Murtha v. Donohoo,* 149 Wis. 481, 134 N. W. 406, 136 N. W. 158.   Notwithstanding the fact that the letter in this case has been lost and no copy of the same could be produced at the trial, the court will consider it a sufficient proof of a writing to charge the promisor with its performance.   *Roehl v. Haumesser,* 114 Ind. 311, 15 N. E. 345; *Anderson v. Anderson,* 75 Kan. 117,

88 Pac. 743; *Dillon v. Gray,* 87 Kan. 129, 123 Pac. 878; *Dilger v. Estate of McQuade,* 158 Wis. 328, 148 N. W. 1085.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles,* of counsel, and oral argument by *J. V. Quarles.* They argued, among other things, that if there had been a contract of adoption it could have been enforced during Cuppel's lifetime. 1 Cyc. 935; *Sandham v. Grounds,* 94 Fed. 83; *Carroll's Estate,* 219 Pa. St. 440, 68 Atl. 1038; *Kauss v. Rohner,* 172 Pa. St. 481, 33 Atl. 1016; *Pollock v. Ray,* 85 Pa. St. 428; *Graham v. Graham's Ex'rs,* 34 Pa. St. 475. The measure of damages is not the value of the share of the promisor's estate which would have been inherited by the child, but the value of services performed or outlay incurred on the strength of the promise, with interest. 1 Corp. Jur. § 26, p. 1378; *Sandham v. Grounds,* 94 Fed. 83. The alleged agreement to make plaintiff an heir is unenforceable. *Ellis v. Cary,* 74 Wis. 176, 42 N. W. 252; *Estate of Kessler,* 87 Wis. 661, 59 N. W. 129; *Martin v. Estate of Martin,* 108 Wis. 284, 84 N. W. 439; *Rodman v. Rodman,* 112 Wis. 378, 88 N. W. 218; *Loper v. Estate of Sheldon,* 120 Wis. 26, 97 N. W. 524; *Taylor v. Thieman,* 132 Wis. 38, 111 N. W. 229. This principle is also supported by many of the courts outside of this state, among which are the following: *Albring v. Ward,* 137 Mich. 352, 100 N. W. 609; *Bowins v. English,* 138 Mich. 178, 101 N. W. 204; *Wallace v. Rappleye,* 103 Ill. 229; *Daily v. Minnick,* 117 Iowa, 563, 91 N. W. 913; *Wyley v. Bull,* 41 Kan. 206, 20 Pac. 855; *Hill v. Hill,* 121 Ind. 255, 23 N. E. 87; *Farnham v. Clements,* 51 Me. 426; *Horton v. Slegmyer,* 175 Fed. 756; *Hale v. Hale,* 90 Va. 728, 19 S. E. 739; *Gould v. Mansfield,* 103 Mass. 408; *Harder v. Harder,* 2 Sandf. Ch. 17; *Wallace v. Long,* 105 Ind. 522, 5 N. E. 666; *Austin v. Davis,* 128 Ind. 472, 26 N. E. 890, 12 L. R. A. 120.

SIEBECKER, J. It is contended that the court erred in awarding judgment dismissing plaintiff's complaint upon the

findings in the case. The basis of this contention is that the contents of the letter written by Charles Cuppel, deceased, in 1870 to Mrs. Ames, with whom plaintiff was then living with the consent of his mother, and the entry by plaintiff into the family of deceased and receiving the support, care, and education of a son until he departed therefrom after arriving at the age of majority, under the circumstances heretofore stated constitute an adoption agreement. It is fundamental to the specific performance of a contract of adoption, where the writing relied on as containing the contract is lost, that the evidence adduced to establish it must be clear, satisfactory, and convincing in its probative force. In such cases the facts must not only be consistent with performance of such a contract, but must also be such that they cannot reasonably be harmonized with any other theory. *Wales v. Holden,* 209 Mo. 552, 108 S. W. 89. Applying these rules to the case before us, it is manifest that the trial court properly dismissed the plaintiff's complaint. The facts found by the court do not establish a contract of adoption. The contents of the letter as established are in their most favorable aspect no more than a declaration by Charles Cuppel, deceased, that he intended to adopt plaintiff. This, however, is no more than a personal declaration that he had determined to adopt him, and fails to show that a contract of adoption had in fact been made with plaintiff's mother, the only person who could contract for plaintiff in this matter. The evidence in the case discloses nothing in the nature of direct proof that a contract of adoption had ever been consummated between deceased and his wife, the plaintiff's mother. The only evidentiary facts bearing on the subject are that plaintiff's mother, subsequent to the writing of the letter, brought him from New Hampshire to their home, that deceased received plaintiff into his home and treated him as a son while residing there, and that plaintiff lived there in that capacity until he attained his majority. This course of events is perfectly harmonious with the idea that plaintiff became a member of decedent's house-

hold as a stepson. It was natural that after plaintiff's mother became the wife of the deceased she would desire to have her son cared for and nurtured in her household and that the husband and stepfather acceded to this, having in contemplation the fact that he would adopt him. These facts and circumstances fail to establish that the mother and stepfather at any time consummated an agreement for his adoption and that plaintiff pursuant thereto entered the family and rendered the services to the deceased. The conduct of plaintiff, his mother, and the decedent, from the time plaintiff entered their family in 1870 to the time of decedent's death in 1911, strongly negatives the claim that such a contract existed. The facts and circumstances are very persuasive to the effect that plaintiff at no time prior to decedent's death understood that his stepfather had made an agreement for adopting him and that he was in fact the adopted son. The evidence tending to show that the deceased regarded the plaintiff as an adopted son is meager and unconvincing. His treatment of plaintiff during his minority and providing for him as he did is more in harmony with the treatment that a stepfather under like circumstances bestows on a stepson. These conditions also refute the contention that the court erred in not finding an express contract of adoption, as plaintiff claims. The facts found by the court contain every ultimate fact sustained by the evidence and embraced in the issues raised. An attentive and exhaustive study of the evidence has led us to the conclusion that the trial court's findings are as favorable to the appellant as the evidence will permit and that the exceptions thereto are not well taken. It is considered that the evidence fails to establish the alleged contract of adoption and hence plaintiff is not entitled to any relief in the case. There is no reversible error in the record, and the judgment of the circuit court must be sustained.

*By the Court.*—The judgment appealed from is affirmed.