ST. VINCENT'S INFANT ASYLUM, Guardian, Respondent, vs. CENTRAL WISCONSIN TRUST COMPANY, Administrator, and others, Appellants.

*December 11, 1925—April 6, 1926.*

*Adoption: Nature of proceedings: Contract to adopt: Specific enforcement when foster-parents are dead: Courts: Concurrent jurisdiction of circuit and county courts.*

1. The circuit court has jurisdiction of an action to establish an adoption, even though adequate relief could be had in the county court; and in this case, where the circuit court took jurisdiction of the action, the supreme court will on appeal pass upon the issues, since presumably all the facts are before the court. p. 485.

2. Adoption proceedings are wholly statutory, and, when the statute is not complied with, a defect in the proceedings cannot be cured by the application of equitable principles. p. 485.

484    SUPREME COURT OF WISCONSIN.    [Apr.

St. Vincent's Infant Asylum v. Central Wis. T. Co. 189 Wis. 483.

3. Preparation of a petition for adoption, not verified and not shown to have been presented to any court, is not an adoption within the statutory requirements. p. 486.

4. Assuming (but not deciding) that a contract to adopt may be specifically enforced, it cannot be where the proposed foster-parents are dead. p. 486.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed, with directions.*

Action to establish an adoption. It appears that Leo Weber was born on September 12, 1913, and on the day of his birth was placed in *St. Vincent's Infant Asylum.* The identity of his father does not appear from the record. His mother, Mary Weber, visited him at least once and perhaps several times, as it appears he was away from the asylum for several years after he was first received. When Leo was about four years old Mr. and Mrs. Elliott visited the asylum and became interested in his adoption. Several letters looking to that end passed between the Elliotts and the asylum, and finally the Elliotts took him, and after having him a year wrote that they intended to adopt him and that their lawyer would make out the necessary papers. A petition for his adoption by the Dane county court signed by Mr. and Mrs. Elliott was received in evidence. The verification is left blank. Sister Gertrude, superior of the asylum, signed a consent at the end of the petition.

Mrs. Elliott died October 24, 1924, and Mr. Elliott had predeceased her. Both had been residents of Madison from at least 1913 to the time of their death. Mrs. Elliott left heirs other than Leo Weber, who was known as Jack Elliott since he began to live with the Elliotts, and who lived with them until their death. The trial court held that Leo Weber stood in the relation of an adopted son of the deceased and was entitled to all the rights of an adopted son in the distribution of the estate of the deceased. From a judgment entered accordingly the defendants appealed.

For the appellants there was a brief by *Bagley, Spohn & Reed,* attorneys, and *Frank A. Ross,* of counsel, all of Madison, and oral argument by *William H. Spohn.*

For the respondent there was a brief by *Curkeet, Lewis & Sanborn,* attorneys, and *William R. Curkeet,* guardian *ad litem,* all of Madison, and oral argument by *Mr. Curkeet.*

The following opinion was filed January 2, 1926:

VINJE, C. J. Whether the circuit court should have refused to take jurisdiction because there was adequate relief to be had in the county court we do not need to decide. *Wisdom v. Wisdom,* 155 Wis. 434, 145 N. W. 126. It took jurisdiction, and it could do so irrespective of what was the better practice. Since the case is here and presumably all the facts that can ever appear are before us, we deem it proper to pass upon the issues.

Objections were made by defendants to the introduction of considerable testimony on the ground of the incompetency of the witnesses, and other errors not necessary to discuss are alleged.

The trial court disposed of the case upon the equitable maxim that equity regards that as done which ought to have been done. And it says: "Where the death of the foster-parents prevents a literal enforcement of the contract to adopt, equity alone can render complete and adequate relief by decreeing that that be done which in equity and good conscience ought to have been done." The error in so considering the case lies in overlooking the fact that adoption proceedings are wholly statutory and do not depend upon equitable principles. *Adoption of Bearby,* 185 Wis. 33, 200 N. W. 686; *Lacher v. Venus,* 177 Wis. 558, 188 N. W. 613. See, also, annotations to Wisconsin Statutes, sec. 4021. In order to constitute one an adopted son of another there must be judicial proceedings to that end conformably to the statute. Equity has no power to declare an adoption. The common law was and is a stranger to adoption proceedings.

So, before we can declare that an adoption has taken place we must consider what has been done and check it up with the statutory requirements. If we do so in this case we find there have been no statutory proceedings at all. The best we have is the preparation of a petition for adoption not verified and not shown to have been presented to any court.

It is admitted by the trial court and the respondent that the law relative to adoption has not been complied with; but it is sought to cure the defect by the application of an equitable principle. Could that be done, statutes prescribing a procedure would have but a shadowy force and we could have an adoption by consent, by private agreement, by estoppel, by fraudulent conduct raising an estoppel, or by any of the hundred and one cases in which equity intervenes in private transactions. But we have only one way of making an adoption, and that is to follow the statute. Clear mandatory statutory proceedings do not permit of equitable repeal. The question in the present case is, Was Leo Weber legally adopted by the Elliotts? not, Should he have been adopted?

Assuming that a contract to adopt may be specifically enforced, upon which we express no opinion, it is clear that it cannot be where the proposed foster-parents are dead. Adoption looks to the future, and the proposed foster-parents must satisfy the court that they have both the means and disposition to properly care for the child. After death they have neither means nor power to fulfil their part of the contract. Their property has gone as their will directs or to their lawful heirs, and death has rendered it impossible for them to give the required parental care.

Much as we regret the result in this case, we are compelled both by statutes and decisions to hold that there was no lawful adoption of Leo Weber by the Elliotts, and that, assuming a contract for adoption existed, no action for specific

performance will lie where both the prospective foster-parents are dead.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment declaring that Leo Weber is not an adopted son of the Elliotts or of either of them.

ESCHWEILER and DOERFLER, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on April 6, 1926.