ESTATE OF CHEANEY: COSBY, Appellant, vs. MARSHALL & ILSLEY BANK, Administrator, Respondent.

*April 7—May 4, 1954.*

For the appellant there was a brief by *Lowry & Hunter* of Waukesha, and oral argument by *Richard N. Hunter.*

For the respondent there was a brief by *Ludwig & Ludwig* of Milwaukee, and oral argument by *Carl J. Ludwig* and by *Harry E. Fryatt, Jr.,* of Waukesha.

GEHL, J. In 1909 Henry Cosby, then seven years old, was released to the Children's Home Society with the request that the Society secure for him legal adoption. Children placed by the Society were ordinarily placed with the intention that they be adopted, although in this case no statement was made to the Society by the Cheaneys that they would adopt him nor was the placement intended as an indenture. He worked on the Cheaney farm and they provided him with food, shelter, clothing, etc. Neighbors testified that the relationship between them was like that of parents and child. He went under the name of "Henry Cheaney." When Mrs. Cheaney offered him pay for his services he refused to accept it explaining that he thought that "maybe I will be repaid some day." He turned over to them moneys which he had earned while working for others. The family Bible contains the statement, "Henry Cheaney was borend [sic] February the 10, 1902," Copies of census reports for the year

1920 identify him as the adopted son of the Cheaneys. In 1919 or 1920 he left the Cheaneys and for nearly two years worked in Racine county. During that period he visited with them every two or three weeks. In 1923 he moved to Kalamazoo, Michigan, and was married there under the name of "Cosby." During the four or five years after he left the Cheaneys he visited them occasionally, staying there for periods of three or four days. In 1951 when Mr. Cheaney died he was asked to come to their home where he made arrangements for the funeral and stayed with Mrs. Cheaney for about three weeks. Mrs. Cheaney once told one of her neighbors that she intended to adopt him. In talks with other neighbors she referred to him as "her boy," "her adopted son."

Claimant contends that the trial court failed to recognize his real contention and erroneously relied upon *St. Vincent's Infant Asylum v. Central Wis. T. Co.* 189 Wis. 483, 206 N. W. 921; *Will of Mathews,* 198 Wis. 128, 223 N. W. 434. He states his position as follows: He concedes that the court is without power to render a decree of adoption after the death of the alleged adoptive parents, but contends that the specific performance here sought is not of an agreement to adopt but only to obtain property rights arising from such an agreement. He urges that we recognize for application to the facts in his case that—

". . . the authorities very generally establish the proposition that a contract by a person to adopt the child of another as his own, accompanied by a virtual, although not a statutory, adoption, and acted upon by both parties during the obligor's life, may be enforced, upon the death of the obligor, by adjudging the child entitled to a natural child's share in the property of the obligor who dies without disposing of his property by will. . . ." 2 C. J. S., Adoption of Children, p. 400, sec. 27.

There is an abundance of evidence, to which we shall call attention, that this court has refused to join with those authorities. Claimant seeks to distinguish *St. Vincent's Infant Asylum v. Central Wis. T. Co., supra,* and relies particularly upon the opening statement of the court's opinion, that it is "an action to establish an adoption." He insists that we must so consider the action. The prayer of the complaint in that action is that plaintiff have judgment "that the agreement and contract made by Esther R. Elliott with said St. Vincent's Infant Asylum for the adoption by said deceased [alleged adoptive parent] of said Leo Weber [plaintiff] be specifically enforced and that it be adjudged and decreed that said Leo Weber is the sole heir at law of said deceased. . . ." The relief demanded was, in effect, the same as that sought here. In a brief filed on motion for rehearing counsel for plaintiff, whose claim had been rejected, called attention to what they considered the court's erroneous treatment of the matter as follows:

"In this case we do not claim and have never claimed in either court that Leo Weber is an adopted child of Mrs. Elliott. The complaint specifically does charge *that Mrs. Elliott made an agreement to adopt the child;* that she failed to perform that agreement and that the child fully performed his part. The judgment demanded was that such agreement be *specifically enforced.*"

The motion for rehearing was denied. From this we must assume that the court well understood the nature of plaintiff's claim when it denied him the relief sought and said (p. 486):

"It is admitted by the trial court and the respondent that the law relative to adoption has not been complied with; but it is sought to cure the defect by the application of an equitable principle. Could that be done, statutes prescribing a procedure would have but a shadowy force and we could

have an adoption by consent, by private agreement, by estoppel, by fraudulent conduct raising an estoppel, or by any of the hundred and one cases in which equity intervenes in private transactions. But we have only one way of making an adoption, and that is to follow the statute. Clear mandatory statutory proceedings do not permit of equitable repeal. The question in the present case is, Was Leo Weber legally adopted by the Elliotts? not, Should he have been adopted?"

The court said also (p. 486) :

"Assuming that a contract to adopt may be specifically enforced, upon which we express no opinion, it is clear that it cannot be where the proposed foster parents are dead. Adoption looks to the future, and the proposed foster parents must satisfy the court that they have both the means and disposition to properly care for the child. After death they have neither means nor power to fulfil their part of the contract. Their property has gone as their will directs or to their lawful heirs, and death has rendered it impossible for them to give the required parental care."

Even more convincing evidence of the court's reluctance to permit one not legally adopted to obtain property rights arising from an agreement to adopt is found in *Winke v. Olson,* 164 Wis. 427, 428, 429, 160 N. W. 164, an equitable action to recover the value of property which plaintiff claimed she became entitled to under a contract whereby she was placed by her father with one Gilbert and his wife to be dealt with as their child. By the terms of a written agreement the father did "relinquish all my right, title, and interest to . . . [his daughter] forever;" he agreed that the Gilberts shall "be the parents of said child and be under their exclusive control forever." The Gilberts agreed "to care for said child in a parental manner and *to enjoy all of the privileges of a child as if born by* . . . [them] and will do our utmost to care for her as if . . . [their] own child."

The child was taken into the home of the Gilberts when she was three years old and was treated in all respects as their

child until she was about twenty years old. Mrs. Gilbert survived her husband and upon her death the action was brought against her estate. The trial court concluded that plaintiff was not entitled to any relief under the contract as regards the property of Mrs. Gilbert and dismissed the complaint. This court affirmed and said (p. 431):

"In a case of this kind, specific performance should not be decreed unless the contract, in its terms and meaning, is clearly established so as to show, without room for fair doubt, that the parties to it intended the child to have the right of heirship the same as if born to those taking it into their family. No such right should be held to have been intended by a contract which is so ambiguous that a different meaning could be reasonably read out of it."

This was not, as we have pointed out, an action to establish plaintiff's status as an adopted child; it was one in equity in which was urged the same claim as is made here. For additional evidence of the court's unwillingness to require less than statutory adoption to qualify one not a natural child to acquire property as an heir, see *Estate of Bradley,* 185 Wis. 393, 201 N. W. 973; *Will of Mathews, supra; Genz v. Riddle,* 199 Wis. 545, 226 N. W. 957.

If it were considered, however, that the court's previous decisions were not authority requiring denial of the claim, the question would still remain: Was there a contract to adopt established? We do not agree that the findings so determine.

At the close of the testimony claimant requested a specific finding upon the question, Did Jennie Cheaney at the time of accepting the custody of Henry A. Cosby agree to adopt him? The judge in a memorandum stated that "findings of fact will be made . . . that Jennie Cheaney at the time of accepting the custody of Henry A. Cosby *agreed to adopt* him in accordance with the laws of the state of Wisconsin." However, in the subsequent formal findings he found only that Mrs. Cheaney at the time of accepting the custody of

Henry A. Cosby, *agreed to accept him for the purpose of adoption,* and that during her lifetime she *intended* to adopt him. Consequently, we are compelled to conclude that the court found that claimant had failed to establish that an agreement to adopt had been made.

Assuming, however, that the court's action with respect to the findings should be construed as determining that an agreement to adopt had been made, we would be compelled to hold that it finds no support in the evidence.

"It is fundamental to the specific performance of a contract of adoption, where the writing relied on as containing the contract is lost, that the evidence adduced to establish it must be clear, satisfactory, and convincing in its probative force. In such cases the facts must not only be consistent with performance of such a contract, but must also be such that they cannot reasonably be harmonized with any other theory." *Heath v. Cuppel,* 163 Wis. 62, 67, 157 N. W. 527.

The circumstances and the statements made by Mrs. Cheaney are consistent with the theory of adoption, but they are not evidence of a contract to make Henry an heir or to adopt him. If there were any evidence of a legal contract to adopt him the testimony might be of some value in proof of an agreement, but without any showing whatever that the Cheaneys had done more than to take him into their home and there treat him as they might a son, the testimony does not establish a contract to adopt him. There is an absolute absence of any evidence from which it might be inferred that either Mr. or Mrs. Cheaney ever agreed to adopt the boy. In fact, it does not appear that either of them ever spoke to a representative of the Society, the only agency with which they might have contracted to adopt him.

*By the Court.*—Judgment affirmed.

Currie, J. (*dissenting in part*). If the majority opinion had been based solely upon the ground that the claimant

Cosby had failed to prove a contract by the deceased to adopt him, I would not dissent therefrom.

Such a disposition of the case would have made it unnecessary for the court at this time to either adopt or reject the rule adopted by most other jurisdictions which have passed upon the question of specifically enforcing a contract to adopt made by a deceased person in so far as the same affects the intestate property of the deceased as distinguished from the status of the claimant. The majority rule is set forth in 2 C. J. S., Adoption of Children, p. 400, sec. 27, and quoted in the majority opinion. It holds that a contract of one person to adopt the child of another as his own, and acted upon by both parties during the obligor's life, may be enforced after the latter's death so as to entitle the child to take the same share in the property of the deceased not disposed of by will as the child would have received if legally adopted. Courts following this majority rule do not hold that the child takes such property as an heir, but rather as a claimant who has an enforceable contract. Such a contract is construed as having been made for the benefit of the child and the child is entitled to enforce it as a third-party beneficiary.

This majority rule is so in accord with humane considerations and the tendency of the law to more and more protect the interests of children that I can perceive of no justifiable reason why this court should summarily reject it. This tendency of expanding the rights of adopted children is manifested in our recent decisions of *Estate of Holcombe* (1951), 259 Wis. 642, 49 N. W. (2d) 914, and *Estate of Nelson* (1954), ante, p. 617, 64 N. W. (2d) 406, in contrast to the less favorable attitude expressed in *Estate of Bradley* (1925), 185 Wis. 393, 201 N. W. 973, and *Estate of Matzke* (1947), 250 Wis. 204, 26 N. W. (2d) 659.

The opinion of the court herein fails to discuss the issue of whether the majority rule is or is not salutary from the

standpoint of what result is more desirable as being in accord with accepted principles of natural justice as evidenced by the trend of judicial decisions and legislative enactment in this field, but rather bases the rejection of the majority rule solely on the narrow ground that we are bound to do so by prior decisions of this court. In order to establish such past precedent the opinion points to no clear declaration to that effect, in any prior decision of this court, because there apparently is none. Instead resort is had to the printed briefs and case (not the opinion) in *St. Vincent's Infant Asylum v. Central Wis. T. Co.* (1926), 189 Wis. 483, 206 N. W. 921, to establish that the court did reject the majority rule when it denied the respondent's motion for rehearing without opinion.

When precedent is as obscurely hidden as this one was, who will be harmed by this court rejecting it on a later occasion by choosing to follow the rule adopted by almost every court which has considered the problem and one that is in keeping with the humane trend in the development of the law in this field? The argument advanced against overruling a past decision of the court, which decision does not accord with generally accepted principles of equity and justice, is that it is often better that the law be certain than a just result be always reached in each case. This latter is especially true in those situations where the past precedent has laid down a rule of property, upon which the legal profession has relied in advising clients in the making of contracts, conveying lands or interests therein, or disposing of property by will.

In contrast to a precedent establishing a rule of property, we have one dealing with the available remedy for breach of a particular type of contract which is rather rarely made. The only persons who could complain by changing the rule are those who have breached a contract to adopt some child.

It seems ridiculous that the legal representative of some deceased person of such class, who has knowingly breached a contract to adopt, made by him, should be permitted to claim that the decedent breached such contract on reliance of a prior rule of this court that no relief could be had against him for so doing, and it would, therefore, be inequitable to the interests of such decedent to now change the rule and grant an enforceable remedy to the child harmed by such breach of contract.

Even if the past precedent in this case constituted an opinion of this court which had in clear language rejected the majority rule, I would have no hesitancy in expressly overruling the same. The proper rule as to when past precedents in the form of decisions of this court should or should not be overruled was well stated by Mr. Chief Justice ROSEN-BERRY in his dissenting opinion in *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 242, 10 N. W. (2d) 206, as follows:

"I do not question the general rule that a decision of this court considerately made should not be overruled except for strong and compelling reason. On the other hand, when the court is convinced that a prior decision is erroneous, in my opinion it should not hesitate to admit its error and correct it at the first opportunity except in cases where the decision has become a rule of property."