Otto C. Jaeger, S.
In this proceeding for letters of administration the petitioner alleges that he is the sole distributee by virtue of having been adopted by decedent’s only child, Harry Freud. In support of these allegations he has annexed to the petition a copy of the order approving the adoption. In the opinion of the court the order is void on its face.
The adoption proceeding was obviously brought in great haste, during the last few days of Harry Freud’s life, for the purpose of adopting an heir for Sophie Freud, the decedent, who was then an old lady, had been living in a nursing home for 8 or 9 years and, of course, was not a party to the proceeding. By then Harry Freud had been married to the petitioner’s mother for over 20 years and the petitioner had long since reached his majority. An adoption was unnecessary in order to permit the petitioner to share in Harry Freud’s own estate since that purpose could have been accomplished much more easily by a will.
The adoption proceeding was brought in Family Court, Westchester County. The adoption order is dated December 30, 1968. It recites that the petition was filed on October 16, 1968; *907 that the appearance of the adopter, Harry Freud was dispensed with “ for good cause shown that Harry Freud died on October 20, 1968; and that as of October 18, 1968 all the statutory requirements had been complied with “ except the signing of the order itself ’ The order notes that the attorney for petitioner moved for an order approving the adoption nunc pro tunc and proceeds to approve the adoption as of October 18, 1968.
The fundamental purpose of an adoption is to establish the relationship of parent and child between living human beings. The proceeding is distinctly personal in nature and, therefore, abates upon the death of either the adoptive parent or the child. The ‘1 adoption does not become final until the order of the court pursuant to section 114 of the Domestic Relations Law ” (Matter of Landon v. Motorola, Inc., 38 A D 2d 18, 21) and can never become final if either the adopter or adoptee dies before the order is signed. Any adoption order made thereafter, whether purporting to speak nunc pro tunc or not, is necessarily void.
Adoption was unknown at common law and exists in New York solely by force of statutes (United States Trust Co. v. Hoyt, 150 App. Div. 621). Those statutes must be strictly construed (Matter of Eaton, 305 N. Y. 162; Matter of Landon v. Motorola, Inc., supra, p. 20). There is no provision in the statutes for the survival of an adoption proceeding after the death of the adopter or adoptee or authorizing a posthumous order approving an adoption.
The court seems to have recognized the inherent invalidity in an order speaking after the death of the adoptive parent and sought to avoid such invalidity by speaking nunc pro tunc. However, if the court, after the death of the adopter, lacked power to make an order approving the adoption, that lack of power could not be overcome simply by stating that the adoption was approved as of an earlier date.
In any event, a nunc pro tunc order approving an adoption, even when all parties are living, is contrary to an express provision of the statute. Section 114 of the Domestic Relations Law provides: “If satisfied that the moral and temporal interests of the foster child will be promoted thereby the judge * * * shall make an order approving the adoption and directing that the foster child shall thenceforth be regarded and treated in all respects as the child of the foster parents or parent.” (italics added; 1970 amendment substituted word “adoptive” for 1 ‘ foster ”). “ Thenceforth ’’ means ‘‘ from that time forward ’’, that is, from the time of the making of the order. An order which relates back to a time prior thereto is inconsistent with this statutory mandate and, therefore, void.
*908 While no case has been found which deals directly with a nunc pro tunc order approving an adoption, the decision in Matter of MacEwan (280 App. Div. 193) is not without significance. Under the earlier adoption statute there involved (L. 1896, ch. 272; Domestic Relations Law, § 1 et seq.) it was the filing and recording of the order and other adoption papers and not the signing of the order which effectuated the adoption. The order and other papers were not in fact filed until after the death of the adoptive father when an order was obtained permitting them to be filed nunc pro tunc. The court held that the nunc pro tunc orders 1 ‘ could not bring into being a fact which did not exist, i.e., the filing and recording of the papers over forty years before. ’ ’
The subject of nunc pro tunc orders was discussed generally in Mohrmann v. Kob (291 N. Y. 181, 186): “ The function of orders nunc pro tunc is to correct irregularities in the entry of judicial mandates or like procedural errors. * * * 1 When a ruling has in fact been made but is improperly evidenced by a defective mandate, or by no mandate at all, an appropriate and suitable order or judgment which manifests the existence of a determination may subsequently be granted to take effect as of the date of such determination. ’ * * * However, an order nunc pro tunc may not serve to record a fact, such as a divorce, as of a prior date when the fact did not then exist.”
Applying these rules to the instant case it is clear that a nunc pro tunc order made on December 30, 1968 could not serve to bring into existence an adoption as of October 18, 1968 when no adoption then in fact existed.
The matrimonial cases such as Cornell v. Cornell (7 N Y 2d 164), relied upon by the attorney for the petitioner, are readily distinguishable. In the Cornell case a decision had been rendered and an interlocutory judgment of divorce entered in favor of the plaintiff wife. The interlocutory judgment provided for the entry of final judgment after three months had expired unless the court directed otherwise. Three months elapsed and the court did not direct£ £ otherwise ’ ’ but there was a failure to enter the final judgment. Some years later the wife remarried and then the defendant husband died. The court upheld the subsequent entry of the final judgment nunc pro tunc on the grounds that the failure to enter such judgment at the end of three months was an omission to perform a ‘ ‘ ministerial act ’ ’ (p. 168) after “ the substantive right to a divorce had already matured ” (p. 169). The court stated (p. 170): “Here there was a final adjudication made during the lifetime of the parties, in that the decision of the Special Term granting the divorce *909 and directing the entry of interlocutory judgment was filed, the interlocutory judgment was entered and the three months specified therein elapsed without the court otherwise ordering against the entry of a final judgment. * * * Consequently, as has been previously stated, all that remained was the mere ministerial act of entering the final judgment to conform to the adjudication of the substantive rights of the parties which had already been made and was expressed in the decision of the court and the interlocutory judgment that were already on record. ’ ’
In the adoption proceeding here involved there was no ‘ ‘ final adjudication made during the lifetime ” of the adopter. There could not be. As stated above, there is no final adjudication in an adoption proceeding until an order is made pursuant to section 114 of the Domestic Relations Law. (Matter of Landon v. Motorola, Inc., 38 A D 2d 18, supra.) Before the order is made the adopter or an adult adoptee may change his mind; a natural parent may withdraw his consent; other circumstances such as sickness or marital difficulties may develop or, as here, death may intervene, and even though the Judge may, in advance, express a willingness to sign the order, until he does so there is no finality. The provision in section 114 that “if satisfied that the * * * interests of the * * * child will be promoted thereby the judge * * * shall make an order approving the adoption ’ ’ must be understood as meaning that he is to be ‘ ‘ satisfied ” as of time of the making of the order. A corollary conclusion is that until such time there is no “ right ” to an adoption.
For can it be said that the making of an order approving an adoption is a “mere ministerial act”. This precise question was before the court in Matter of Landon v. Motorola, Inc. (supra, p. 22) where the Appellate Division, Third Department, held the finding of the Workmen’s Compensation Board “ that the mere signing of the final order of adoption was a ministerial act ’ ’ was ‘ ‘ error as a matter of law ’ ’.
An order approving an adoption does not simply formalize, evidence or record a prior judicial determination establishing the substantive rights of the parties, but is itself the substantive judicial determination by which those rights are established.
Since the order is void there was no adoption and the petitioner is not a distributee.
Although^ further investigation is necessary, an affidavit on file indicates that decedent has one or more distributees. However, it does not appear that there is any known distributee who is eligible to receive letters. In these circumstances limited let *910 ters of administration will issue to the Public Administrator upon his qualifying according to law.
The Public Administrator shall serve notice pursuant to SCPA 1005 upon the one distributee whose name and address are known.