Millard L. Midonick, S.
A question arises in this accounting proceeding as to whether or not an adopted child is entitled to an interest in property bequeathed pursuant to a power of appointment granted by the testator. The donee of the power explicitly exercised the power by article fifth of her will. The *910 pertinent portion of that article appears in subdivision (f) and reads:
“ The balance of said Part A of my husband’s residuary estate shall be divided among and paid over and distributed in equal shares to the children then living (if any) of the following grandchildren of my husband: Patricia Robertson Wilson, Alexander J. Robertson, Jf., Conya C. Pembroke, Lucy C. Kelly, Carle 0. Conway, III, Sylvia C. Williams, Vanderlip Conway, Merry Carla Conway ”.
Cotter C. Conway is the adopted child of Carle C. Conway, III, one of the persons named in the above-quoted subdivision of the donee’s will. The adoptee was born on April 12, 1966. The donee of the power of appointment died on April 21, 1966. Thereafter, on May 3, 1966 the adoptee was relinquished by his natural mother to an adoption agency. The adoption proceeding was instituted in a California court on January 12,1967 and the order of adoption was entered on April 4, 1967.
The simple question is whether or not the adoptee was a child of Carle C. Conway, III, on April 21,1966, the date of the death of the donee of the power of appointment. The answer to this question must be negative, inasmuch as at the date of the donee’s death the child had not been relinquished by his natural mother and it was not until the following calendar year that proceedings for adoption were instituted. At the date of the death of the donee of the power the child, later adopted, was the child of his natural mother.
An ingenious, but wholly unconvincing, contention is made that the adoptive status of the child should revert back to the date of his birth rather than to the date of the adoption order. This argument is premised upon an attempt to create an analogy between a child en ventre sa mere and an adopted child and it is urged that the relationship of adoptive parents and adopted child should include a period prior to the initiation of adoption proceedings equivalent in time to the normal period of human gestation. This imaginative reasoning seems to have been inspired by a coincidence that a child en ventre sa mere at the date of the death of the donee of the power of appointment has been given recognition in this proceeding as a person having an interest in the appointed property.
Adoption proceedings are wholly statutory and did not exist at common law (Matter of Thorne, 155 N. Y. 140; Matter of Kruse, 120 Cal. App. 2d 254). Under the law of this State an adoption does not become final until the order of the court made pursuant to the Domestic Relations Law (Matter of Landon v. Motorola, 38 A D 2d 18, 21; Matter of MacEwan, 280 App. Div. *911 193; Matter of Freud, 69 Misc 2d 906). The law of California is to the same effect (Matter of Pillsbury v. Title Ins. & Trust Co., 175 Cal. 454).
Section 114 of the Domestic Relations Law provides that the appropriate court shall make an order approving an adoption “ and directing that the foster child shall thenceforth be regarded and treated in all respects as the child of the foster parents or parent.” (Emphasis added.) In refusing to recognize a nunc pro tune adoption order the Surrogate in Matter of Freud. (69 Misc 2d 906, 907) stated: “Thenceforth ’ means ‘ from that time forward ’, that is, from the time of the making of the order. An order which relates back to a time prior thereto is inconsistent with this statutory mandate and, therefore, void.”
At the date of the death of the donee of the power of appointment, the Public Health Law provided that a new birth certificate should be made whenever ‘ ‘ notification is received by, or proper proof is submitted to, the commissioner from or by the clerk as aforesaid of a judgment, order or decree relating to the adoption of such person ”. (Public Health Law, § 4138, subd. 1, par. [c].) That legislation would seem to be intended as a convenient means of enabling an adoptee to establish his relationship to his foster parents by the production of a birth certificate, since the record of an adoption proceeding is sealed and not available to the public or even to the adoptee without court permission (Domestic Relations Law, § 114). If this statutory provision were to be regarded as establishing the relationship of the adoptee to his foster parents as of the date of the adoptee’s birth, such a construction of the statute would open the door to opportunists who see a chance to participate, indirectly through an adopted child, under a will of a relative who made no testamentary provision for the foster parent. Such a construction of the statute would also challenge the finality of decrees settling estates in that it would permit an adoptee, born before the death of a testator but later adopted, to acquire a status as a legatee not only after the death of the testator but even subsequent to a decree settling a testator’s estate. It can be envisioned that the adoption of a 20-year-old minor, long after the death of a testator, or even an intestate, could cause the reopening of many estates years after either the legatees or the blood relatives of the decedent had agreed to a complete disposition and disbursement of the estate assets. The court construes the Public Health Law as having the purpose of creating a record of an adoption. A construction of this law as having the legal effect of conferring upon an adoptee a status equivalent to that of a natural child as of the date of the *912 adoptee’s birth would result in the disruption of the administration of estates.
Upon the death of the donee of the power of appointment the adoptee was not a child of Carle C. Conway, III, and, for such reason, it is held that the adoptee acquired no interest in the appointed property.