William Charles Laws JOHNSON By his next friend Charlie Marie JOHNSON, Plaintiff/Appellee,

v.

Ann WILBOURN, Administratrix of the Estate of Thomas David Powell, and Minnie Powell, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 14, 1989.

Application for Permission to Appeal Dismissed by Supreme Court Oct. 30, 1989.

Rita L. Stotts, Memphis, for defendants, appellants.

R. Dan Strickland, Sr., Memphis, for plaintiff, appellee.

TOMLIN, Presiding Judge, Western Section.

Defendants have appealed from a decree entered by the Chancery Court of Shelby County declaring William Charles Laws Johnson (hereafter "William")[1] to be the lawfully-adopted son of Thomas David Powell, deceased, (hereafter "Powell") notwithstanding the fact that Powell, a single person, had been dead for some five years at the time the decree was entered. William, by next friend, filed this declaratory judgment action against Powell's estate and his mother, who claimed to be Powell's next-of-kin and sole heir, to have himself declared Powell's adopted son and heir. The chancellor found that although no final decree of adoption had been entered, Powell had "substantially complied" with all the statutory requirements to perfect the adoption and entered an order declaring William to be Powell's legally-adopted son, with rights of inheritance. The single issue presented by this appeal is whether the chancellor erred in finding William to be Powell's legally-adopted son. We hold that he did and reverse and dismiss.

The basic facts are not in dispute. Powell never married and had no children. In 1979, Powell contacted the Tennessee Department of Human Services ("TDHS") informing it that he was interested in adopting a male child between the ages of six and thirteen. In October, 1980, Powell entered into an "adoptive placement agreement" with TDHS, pursuant to which William, then thirteen, was placed in Powell's home as a prospective adopted child. The full legal guardianship of William at that time remained in TDHS. Some areas of conflict developed between Powell and William, who was removed from Powell's home in 1981 at Powell's request. Powell and William remained in contact with one another, and William was returned to Powell's home by TDHS the following year.

Adoptions in Tennessee are governed by statute, specifically T.C.A. § 36–1–101, et seq. Pursuant to § 36–1–105, Powell filed a petition for adoption in the Chancery Court for Shelby County on April 5, 1983. The case was assigned to a different division of that court than the one from which this appeal is taken. It is of interest to note that the attorney who filed the adoption petition on behalf of Powell is the same attorney who filed this suit for declaratory judgment on behalf of William.

Powell's petition sought the following relief, in part:

1. That an Order of Reference be entered requiring the Tennessee Department of Human Services to report to the Court as required by law.

2. That upon the filing of the Answer, Consent and report by the Tennessee Department of Human Services, through the County Director, and (sic) Interlocutory Decree of Adoption be entered in this Court awarding the petitioner, THOMAS DAVID POWELL, the sole custody of said minor child, WILLIAM CHARLES LAWS POWELL; that in accordance with the law governing adoptions, a Final Decree of Adoption be entered at such time as determined by this Honorable Court.

Some three weeks later Powell was murdered, killed by multiple gunshot wounds. There is nothing in the record explaining why or by whom he was killed. In early May, 1983, Minnie Powell, Powell's natural mother and one of the defendants here, filed a petition in the Probate Court of

---

**1.** William was a minor when this suit was filed through his next friend. During pendency of these proceedings, he attained the age of majority.

Shelby County, alleging that she was Powell's sole heir and next of-kin. She further alleged that her son died intestate and asked for the appointment of Ann Wilbourn, another co-defendant, as administratrix of Powell's estate. The appointment was made on the same day. Meanwhile, apparently unaware of Powell's death, TDHS filed a preliminary investigative report in the adoption proceeding in chancery court approving Powell's adoption of William.

In June, 1984, this suit was filed on behalf of William. The record before us shows no activity in the adoption proceedings following the filing of the TDHS report in June, 1983 until November, 1987, when the adoption petition was dismissed for failure to prosecute. The chancery court hearing in the case at bar was held on May 11, 1988, at which time the chancellor, from the bench, rendered his opinion which was subsequently incorporated into and made a part of that court's final decree. No testimony was heard at that hearing. Opposing counsel conducted oral argument and stipulated to certain facts.

The chancellor found and ruled that: (1) William was declared to be the legally-adopted child of the deceased, Powell; (2) Powell "did all he could do to adopt the child"; (3) except for the fact that Powell died, he would have adopted William; (4) he, as chancellor, would have approved the adoption had it been presented to him; and (5) in reaching such a decision the court declared as done what should have been done.

## I. THE NATURE OF ADOPTIONS IN TENNESSEE

The current adoption statutes, except as subsequently amended, were enacted by our General Assembly in 1951. However, this state had adoption statutes dating back to Thompson's Shannon's Code. In 1917, in the case of *In re Knott*, 138 Tenn. 349, 197 S.W. 1097 (1917), our Supreme Court was called upon to consider the nature of the adoption statutes then in effect.

Citing cases from other jurisdictions, the Court stated:

The right of adoption is not a natural one. It contravenes common right, and originated with the statute. It was unknown to the common law, although it was practiced by the ancients of Greece and Rome, and probably other ancient people, and is of the remotest antiquity.

. . . .

The sections of the Code [Thompson's Shannon's] above set out are in derogation of the common law, and must be strictly construed.

*Id.* at 352–53, 197 S.W. at 1098 (citations omitted).

The courts of this state have continued to so hold following the enactment of the current adoption statute. In *Clements v. Morgan*, 201 Tenn. 94, 296 S.W.2d 874 (1956), our Supreme Court ruled as follows:

We are of the opinion that this statute must be complied with *in all things.*

The right of adoption is not a natural one and was unknown to the common law. *Rogers v. Baldridge*, 18 Tenn.App. 300, 76 S.W.2d 655.

The adoption of a child is governed by statute and to effect a legal adoption it *must be strictly complied with. Coonradt v. Sailors*, 186 Tenn. 294, 209 S.W.2d 859, 2 A.L.R.2d 880; *In re Knott*, 138 Tenn. 349, 197 S.W. 1097.

*Id.* at 97, 296 S.W.2d at 875 [emphasis added].

In a companion case styled *In re Clements' Petition*, 201 Tenn. 98, 105–06, 296 S.W.2d 875, 879 (1956), our Supreme Court elaborated upon their earlier position by stating:

Section 36–120, T.C.A., among other things provides that:

"Until the final order is made, the child shall be a ward of the court having jurisdiction. The petitioning adopting parents, however, shall act as guardian ad litem or next friend of the child in any suit for injuries done by a

third party to the child while the child is in the care and custody of the said petitioning parents."

This provision as well as others that might be found in the Code clearly show that until the court has finally adjudicated that the petitioners for adoption are suitable ones and that it is for the best interest of the child to be placed with them for adoption that no legal rights attach to either of the parties until said adoptive statutes are carried out. We in effect approved this principle when this Court in *Coonradt v. Sailors,* 186 Tenn. 294, 209 S.W.2d 859, 861, 2 A.L.R.2d 880, said:

> "By the great weight of authority, the adoption of a child is governed by statute and to effect a legal adoption it must be strictly complied with."

Another case emphasizing the strict compliance doctrine regarding adoptions is *In re Van Huss' Petition,* 207 Tenn. 168, 338 S.W.2d 588 (1960). The only flaw in that adoption proceeding was that the husband of the petitioning couple, from the time of the filing of the adoption petition up to the date of the hearing, had served in the U.S. Navy aboard ship away from Tennessee. As a result, he had not been physically present in the state for one year next preceding the filing of the petition as then required by T.C.A. § 36–105. Notwithstanding that the petitioner was a man of good character, financially able to rear and educate the child, and that the Department of Public Welfare had recommended the adoption as being for the best interest and welfare of the child, the trial court denied the petition. In affirming, our Supreme Court stated:

> Since there is no common law right of adoption, as observed in *Clements v. Morgan, supra,* no right of adoption exists in Tennessee, except such as is given by statute. As the law now stands that right is given only by the 1959 statute carried at 36–105 1959 T.C.A. Supplement. If the Court is to ignore the provisions of that statute, then the right of

adoption will not exist in Tennessee. If the 1959 statute is not to be ignored, then its requirements "must be strictly complied with." *Id.* at 173, 338 S.W.2d at 590–91.

*See also Scott v. Pulley,* 705 S.W.2d 666 (Tenn.App.1985); *In re Adoption of Edman,* 48 Tenn.App. 375, 348 S.W.2d 345 (1961).

■ Looking at the case at bar in the light of the above-cited cases, this Court observes that several sections of our adoption statute have not been complied with. We note that § 36–1–101 recites that "(a) The primary purpose of this chapter is to protect children from unnecessary separation from parents who might give them good homes and loving care...."

Section 36–1–115 provides in substance that in an adoption proceeding under this chapter a child who is fourteen years of age or becomes fourteen years of age before the granting of a final order of adoption "must also consent in chambers before judge or chancery or circuit court to the proposed adoption." It is undisputed that this did not occur in the original adoption proceeding.

Section 36–1–124(d) provides in part that the court handling the adoption may waive the granting of the interlocutory decree (provided for in § 36–1–119). The court may grant a final order of adoption after the child has resided in the home of the adoptive parents for a period of one year, but further provides that no final decree shall be entered until six months following the filing of the petition. Under the facts of this case the six-month period would not have been met.

Section 36–1–125 provides that the final order of adoption must state the following, among other things:

> (3) The full names of the petitioners and their county of residence;
>
> . . . .
>
> (7) That the petitioners are fit persons to have the care and custody of the child;
>
> (8) That the petitioners are financially able to provide for him;

. . . .

(10) . . . .

(b) The order shall thereupon decree the adoption of the child by the petitioners and may order that the name of the child be changed to that requested in the petition.

Finally, Section 36–1–126, "Effect of adoption on relationship," provides in pertinent part as follows:

(a) The signing of a final order of adoption establishes from that date the relationship of parent and child between the adoptive parents and the adopted child as if the adopted child had been born to the adoptive parents in lawful wedlock and the adopted child shall be deemed the child of such parents, the same as if he had been born to them in lawful wedlock, for all legal consequences and incidents of the natural relation of parents and children.

A final order of adoption was never entered.

In addition to all of the above sections of the adoption statute that were not complied with, the absence of a legal basis to enter a decree of adoption is emphasized even more by the fact that the adoption proceeding was dismissed some six months prior to the decree in this case. As counsel for petitioner herein was also counsel of record for Powell in the adoption proceedings, he cannot claim ignorance of the status of the adoption proceedings pending in another division of the chancery court. Rather than seeking to prevent the dismissal of the adoption proceedings (if there were any grounds therefor), counsel permitted them to be dismissed, later bringing this action.

A case very much in point, in which the chancellor likewise erred in decreeing an adoption based upon equitable maxims, is *St. Vincent's Infant Asylum v. Central Wisconsin Trust Co.,* 189 Wis. 483, 206 N.W. 921 (1926). In that case, St. Vincent's placed a four-year-old child with adoptive parents who advised St. Vincent's of their intent to adopt the child. Adoption papers were prepared, but there is no evidence that the adoption proceedings were carried out. After the child had lived with the adoptive parents for seven years, following the death of the second of the two parents, suit was filed seeking to procure for the child all the rights of an adoptive child. The trial court held that the child stood in the relation of an adoptive son of the deceased, disposing of the case upon the equitable maxim that equity regards as done that which ought to have been done. In reversing, the Wisconsin Supreme Court stated:

The error in so considering the case lies in overlooking the fact that adoption proceedings are wholly statutory and do not depend upon equitable principles. . . . In order to constitute one an adopted son of another, there must be judicial proceedings to that end conformably to the statute. Equity has no power to declare an adoption. *Id.* 206 N.W. at 922.

In addition, the *St. Vincent's* court went ahead to say:

Assuming that a contract to adopt may be specifically enforced, upon which we express no opinion, it is clear that it cannot be where the proposed foster parents are dead. Adoption looks to the future, and the proposed foster parents must satisfy the court that they have both the means and disposition to properly care for the child. After death they have neither means nor power to fulfill their part of the contract. Their property has gone as their will directs or to their lawful heirs, and death has rendered it impossible for them to give the required parental care. *Id.* 206 N.W. at 922.

*See also Davis v. Turner,* 337 So.2d 355 (Ala.Civ.App.1976) *cert. denied,* 337 So.2d 362 (Ala.1976); *In re McCauley's Adoption,* 177 Neb. 759, 131 N.W.2d 174 (1964); *Borner v. Larson,* 70 N.D. 313, 293 N.W. 836 (1940).

In addition, we take note of the fact that our Supreme Court in *Bank of Maryville v. Topping,* 216 Tenn. 597, 393 S.W.2d 280

(1965), reaffirmed that adoption is a creature of statute and held that adoption by estoppel is not recognized under the laws of this state.

## II. MAY A DEAD PERSON ADOPT?

■ We feel compelled to address directly the underlying issue presented by this case—that is, whether the death of Powell, the would-be adoptive parent, abated the adoption proceedings so as to render ineffective any decree entered thereafter.

Having already recognized that the courts of this state have long held that the adoption statutes must be strictly complied with, we note that our adoption statutes give but limited recognition and approval of an adoption following the death of a prospective adoptive parent. If after a husband and wife jointly petition to adopt a child and an interlocutory decree has been entered, should one spouse die before the entry of the final order, the court may grant the adoption to the surviving petitioner. See T.C.A. § 36–1–120. There is no such provision permitting the survival of an adoption proceeding after the death of the prospective parents or authorizing a posthumous order approving an adoption.

The case of *In re Adoption of Gillis*, 543 S.W.2d 846 (Tenn.1976) can readily be distinguished from the case under consideration. In *Gillis*, the Supreme Court reversed the trial court's order dismissing a petition for a posthumous *nunc pro tunc* order of adoption. However, in that case, the "adoptee" alleged that the trial court actually heard evidence and granted the petition for adoption prior to the adoptive parent's death, but that a final decree was never signed and entered on the minutes of the court through either inadvertence or oversight of the attorney or court clerk. In reversing, the Supreme Court simply held that the "adoptee" was entitled to put on proof to that effect and remanded the case for further proceedings. In the case at bar, William has made no such contention, and it is undisputed that at the time of Powell's death the only thing that had transpired was the filing of the adoption petition.

The concept of decreeing an adoption where either the adopter—in the case of a single parent—or the adoptee dies is totally contrary to the principles and purposes of an adoption. It goes without saying that a decree of adoption would establish the relationship of parent and child to the same extent as if the child had been born to such parent in lawful wedlock. An adoption necessarily looks to the future. By means of adoption the adoptee is provided physical care, love, affection, and spiritual and emotional guidance by the adoptive parent. By the same token, the adoptive parent is placed in a position of responsibility for raising the child, from whom it is hoped will flow love, affection and respect for the adoptive parent, as well as all the intangible benefits that come about from raising a child to adulthood. All this presupposes that both the adopting parent and the adopted child are living at the time this relationship is brought into being by court order. See *Korbin v. Ginsberg*, 232 So.2d 417 (Fla.App.1970). The rationale of the court in *In re Estate of Freud*, 69 Misc.2d 906, 331 N.Y.S.2d 224, 225–26 (Sur.Ct. 1972), a case strikingly similar to the case under consideration, sets forth the rule which should govern here:

> The fundamental purpose of an adoption is to establish the relationship of parent and child between living human beings. The proceeding is distinctly personal in nature and, therefore, abates upon the death of either the adoptive parent or the child. The "adoption does not become final until the order of the court ... and can never become final if either the adoptor [sic] or adoptee dies before the order is signed. Any adoption order made thereafter, whether purporting to speak *nunc pro tunc* or not, is necessarily void."

*See also In re Adoption of Bradfield*, 97 N.M. 611, 642 P.2d 214 (1982); *Besche v. Murphy*, 190 Md. 539, 59 A.2d 499 (1948); *Venables v. Ayres*, 54 Md.App. 520, 459

A.2d 601, 603–604 (1983); *In re Estate of Conway,* 74 Misc.2d 909, 346 N.Y.S.2d 682 (Sur.Ct.1973).

For the reasons above stated, the decree of the chancellor below is reversed. William's complaint is dismissed. Costs on appeal are taxed to William, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.