# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

TODD HARMON,                          )
                                      )
     Plaintiff/Appellee,              ) Carroll Chancery No. 96-DR-187
                                      )
VS.                                   ) Appeal No. 02A01-9709-CH-00212
                                      )
JANET HARMON,                         )
                                      )
     Defendant/Appellant.     )

FILED

December 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CHANCERY COURT OF CARROLL COUNTY
AT HUNTINGDON, TENNESSEE
THE HONORABLE WALTON WEST, CHANCELLOR

**LAURA A. KEETON**
**LAW OFFICES OF ROBERT T. KEETON, JR.**
Huntingdon, Tennessee
Attorney for Appellant


**KEVIN McALPIN**
**JAMES H. BRADBERRY & ASSOCIATES**
Dresden, Tennessee
Attorney for Appellee

**AFFIRMED**


                                     **ALAN E. HIGHERS, J.**


**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**_____

Megan Harmon ("Megan" or "Appellant"), minor child born during the marriage of Plaintiff/Appellee, Todd Harmon ("Mr. Harmon" or "Appellee") and Defendant Janet Harmon ("Mrs. Harmon"), by and through her Guardian Ad Litem (G.A.L), appeals the decision of the trial court which found that Appellee was not the biological father of Appellant, and incorporated into the decree of divorce the marital dissolution agreement in which the parties agreed Appellee would have no further obligation to the child.[1]

## I. Factual and Procedural History

The Parties, Todd Harmon and Janet C. Harmon, were married on December 3, 1994. At the time of the marriage, Janet Harmon was pregnant. Todd Harmon was aware that Janet Harmon was seeing another man, as well as himself, during the time that she became pregnant. Todd Harmon alleges that he married Janet Harmon under the pretense that he was the father of the child. The minor child, Megan Harmon, was born on June 23, 1995, and Todd Harmon is listed as the father of the child on the birth certificate. No other putative father has been made known to the Court or the G.A.L

On October 9, 1996 Todd Harmon filed for divorce alleging that he may not be the child's father. Up until the time Todd Harmon filed for divorce he treated the child as his own. The matter initially came up for hearing and at that point in time the Court was made aware that Mr. Harmon was asking the Court to declare that he was not the biological father of the minor child and therefore a G.A.L. was appointed to represent the interests of the minor child.

On April 3, 1997, Todd Harmon filed a motion to amend the complaint and alleged that the minor child was not his and he should have no obligation for the support and care of the child, and that the child should be made a party defendant and to have a G.A.L. appointed.

A written G.A.L. report was filed on June 20, 1997 wherein it was reported that it was in the best interest of the child that the divorce should not terminate Todd Harmon's legal obligations to the child.

The parties entered into a marital dissolution agreement in which both parties acknowledged that Todd

---

[1]The G.A.L. has appealed on behalf of the minor child; hence, the child is characterized herein as Appellant.

Harmon was not the biological father of the minor child and agreed that Todd Harmon would have no further legal obligation to the child. The matter came to be heard in open court on June 24, 1997, at which time Todd Harmon did offer into evidence a blood test which shows he is not the father. The G.A.L. report was presented and the G.A.L. was allowed to question the Plaintiff in open court and to argue to the court that the Plaintiff retained a duty and was estopped to deny the same to the child. The trial court approved the marital dissolution agreement, found that Todd Harmon was not the biological father of the minor child, and that he would have no further obligation to the minor child. The decree of divorce was entered on July 29, 1997.

## II. Non-biological Father's Liability for Child Support

This is a case where parties to a divorce agreed that the Husband was not the biological father of the minor child born during the marriage and this fact was confirmed by a blood test. The parties agreed in their marital dissolution agreement that Mr. Harmon would no longer have any obligation to the child.

A recent case dealing with this issue is the case of Witt v. Witt, 929 S.W.2d 360 (Tenn. App. 1996). In Witt, the parties to the divorce stipulated in a marital dissolution agreement that the child born during the marriage was not the natural child of the husband, and the husband forfeited all his paternal rights and obligations to the child. The mother subsequently applied for and received AFDC benefits from the State of Tennessee, and the State in turn filed an action seeking to impose child support obligations on the ex-husband and to establish paternity. The parties underwent blood tests which revealed that the ex-husband was, in fact, the natural father of the child. The Court set aside the portion of the divorce decree forfeiting his parental rights and obligations and ordered the ex-husband and father to pay child support for the minor child.

The Court in Witt held that agreements, incorporated in court decrees or otherwise which relieve a *natural* or *adoptive* parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly. Witt at 363 (emphasis added). The Court then added the following:

> We wish to further state that a child or children born to a marriage cannot be rendered illegitimate, directly or indirectly, in any divorce action or other proceeding unless the child or children are made parties to the action, afforded the protection of a guardian ad litem, and counsel, if necessary. Witt at 363.

The Court was concerned with parties entering into agreements which relieve a parent of his or her obligation

3

to support a child without affording the child any protection. In the Witt case, the Court particularly stated that it was convinced that the parties joined in a blatant untruth in their marital dissolution agreement.

In order to provide the child with protection in such cases, the Court set forth the procedure to be followed in situations where a husband seeks to be relieved of his obligation to support a child who is not his but was born during the course of the marriage. The Court sought to assure that parties do not agree to relieve a parent of his or her obligation to support a child who is actually the biological child of both parties, as was the case in Witt. Importantly, the Court in Witt never found that a husband could *not* seek such relief in a divorce action. In fact, the language setting out the proper procedure would be meaningless if a husband could not seek such relief.

In the case at hand, Appellant was made a party to the action and was afforded the protection of a G.A.L. Blood tests were introduced which showed that Mr. Harmon was not the biological father of Appellant. This was not the situation, as in Witt, where the parties were seeking to relieve the husband of his obligation to support a child which was, in fact, the biological child of the husband. Mr. Harmon followed the proper procedure, as set forth in the Witt case, in seeking to be relieved of his obligation to support Appellant.

Having concluded that, under the existing case law, a husband may seek to avoid his child support obligation for a child born during the marriage but which is not his biological child, we must now address the Appellee's burden in overcoming the presumption of legitimacy. In the common law of Tennessee, there has long been a presumption of legitimacy growing out of birth during wedlock and the early rule was that this presumption was so far conclusive that it could be overcome only by proof of impotence on the part of the husband or his absence from the realm during the period when the child was conceived. However, the hardship worked by this rule led to its modification by the courts. Cannon v. Cannon, 26 Tenn. 411 (Tenn. 1846).

In Cannon, the Tennessee Supreme Court held that the presumption of legitimacy was rebuttable, and in that case, held that a child born during the marriage was not the child of the husband. In Jackson v. Thornton, 133 Tenn. 36, 179 S.W. 384 (1915), the Court held that the presumption may be overcome by clear, strong, and convincing evidence. In Pressley v. Pressley, No. 03A01-9311-CV-00400, 1995 Tenn. App. LEXIS 77 (Ct. App. Feb. 10, 1995), the facts are very similar to the matter at hand. The Court relieved a Husband of

4

his obligation to support the child upon divorcing the mother. The Court found that it was established not only by clear and convincing evidence that the husband was not the father of the child in question, but it also had been established (as between the parties) by stipulation. A stipulation made before the court is a sacrosanct pact with the court and is to be treated inviolable except under the most unusual circumstances.

In the case at hand, Appellee established that he was not the biological father of Appellant through the introduction of a blood test. With the present state of technology and the accuracy of such tests, these test results certainly qualify as clear and convincing evidence. Additionally, the parties agreed in their marital dissolution agreement that Appellee was not the biological father of the child and should be relieved of his rights and obligations to the child. Appellant was provided a G.A.L to protect her interests and to ensure that Appellee carry his burden of proof.

Additionally, Tenn. Code Ann. §36-2-304, while not in effect at the time this matter was heard, evidences the intent of the Tennessee legislature in this area. The relevant portions of the statute are as follows:

> **§36-2-304 Presumption of parentage** - (a) A man is rebuttably presumed to be the father of a child if:
> (1) He and the child's mother are married or have been married to each other and the child is born during the marriage or within three hundred (300) days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce; . . .
> (b)(1) Except as provided in subdivision (2), a presumption under subsection (a) may be rebutted in an appropriate action.
> (3) The standard of proof in an action to rebut paternity shall be by preponderance of the evidence.
> (4) All prior presumptions of parentage established by the previous paternity and legitimation statues and cases are abolished.

Under this statute, while a child born during the marriage is presumed to be the child of the husband, the husband can rebut the presumption by a preponderance of the evidence.

For the foregoing reasons, we hold that under the existing case law, a husband may seek to avoid his child support obligation for a child born during the marriage but which is not his biological child, if a guardian ad litem is appointed to represent the best interest of the child, and if the husband is able to rebut the presumption of legitimacy by clear, strong and convincing evidence to the contrary.

5

# III. Estoppel

Mr. Harmon married the mother of the child knowing there was a possibility the child was not his. Mr. Harmon allowed his name to be placed on the birth certificate as the father of the child. Furthermore Mr. Harmon celebrated the birth of the child and treated the child as his own until the time of the divorce. Appellant urges this court to find that Mr. Harmon should therefore be estopped from denying responsibility for the child.

Tennessee is not a state which recognizes adoption by estoppel. Johnson v. Wilbourne, 781 S.W.2d 857, 862 (Tenn. Ct. App. 1989). In Johnson this Court cited a Wisconsin case in which the trial court had found adoption by estoppel upon the equitable maxim that equity regards as done that which ought to have been done. In reversing, the Wisconsin Supreme Court stated:

> The error in so considering the case lies in overlooking the fact that adoption proceedings are wholly statutory and do not depend upon equitable principles . . . In order to constitute one an adopted son of another, there must be judicial proceedings to that end conformably to the statute. Equity has no power to declare an adoption. St. Vincent's Infant Asylum v. Central Wisconsin Trust Co., 206 N.W. 921 (1926).

Appellant argues that in the recent case of Evans v. Steelman, 970 S.W.2d 431 (Tenn. 1998), our Supreme Court has accomplished adoption by estoppel without labeling it as such. The case of Crawford v. Crawford was consolidated with Evans on appeal. In both cases, the putative fathers brought actions to legitimate their children born during the respective mothers' marriages to other men. The Tennessee Supreme Court found that the fathers did not have standing to bring such legitimation actions.

The Tennessee Supreme Court in Evans held that under the version of the legitimation statute in effect at the time the actions were filed, children "not born in lawful wedlock" applied only to children born to unmarried women. Tenn. Code Ann. §36-2-202 (repealed). Therefore, putative fathers could not bring legitimation actions in these situations. Our Supreme Court found that the statute survived due process and equal protection challenges as the father's relationship with the child born under such circumstances was not an interest protected by due process and the state's interest in preserving the integrity of the family provided a rational basis for the statute.

Although the Evans case prevents a putative father from asserting a claim to the child in deference

to the family into which the child was born, the case does not support the claim that Tennessee now recognizes adoption by estoppel. The case does not address the issue of compelling a non-biological father, upon divorce, to support a child born during a marriage. Rather, the Evans case addresses the scenario where an outsider to a marriage wants to assert a superior claim to a child that is being raised within the stability of a marriage.

Additionally, while not in effect at the time this case was filed, the legislature has now established a single cause of action to establish parentage of children. Under the new legislation, "child born out of wedlock" is specifically defined to mean "a child born to parents who are not married to each other when the child was born." While the legislature declined to make this legislation retroactive, the statute further indicates that the presumption is rebuttable that a child born to a married woman is her husband's legitimate child.

The law does not treat as trivial an action that relieves a parent of his duty to support his child. However, Tennessee does not provide for the imposition of a child support obligation upon an individual unless that person has a duty to support his or her natural or adopted child. While relieving a father of his duty to support a child born during his marriage to the child's mother may work a harsh result, the trial court and the G.A.L. are there to ensure that this result is reached only when the child's true status is shown by "clear, strong, and convincing" evidence. If evidence of this quality is not presented, the court should refuse to find a lack of paternity. Fortunately, blood tests are now available which make a mistake in this critical area less likely to happen than at an earlier time.

A minor child who is determined in a divorce proceeding not to be the natural child of his or her mother's husband, is not without recourse in the law. There are statutory provisions designed to establish, if not foster, the relationship between a child and his natural father. See Tenn. Code Ann. §36-2-301 through §36-2-322. In Tennessee, a parent is obligated to support that parent's natural and adopted minor children. See Tenn. Code Ann. §36-6-101(a). In the absence of a formal adoption, a man is not obligated to provide support for a child when it is shown by clear, strong, and convincing evidence that he is not the natural parent of the child.

In the instant case, the parties agree that Mr. Harmon is not the biological father of the child. It was further established by a blood test that Mr. Harmon could not be the biological father. Additionally, a G.A.L.

7

was appointed to represent the best interest of the child and to ensure Mr. Harmon carried his burden of proof. Mr. Harmon has not adopted the child. The law does not impose an obligation on him to support the child. For all the foregoing reasons, the trial court did not err in finding that Mr. Harmon was not the biological father of the minor child and that he would have no further obligation to the child.

### IV. Conclusion

The judgment of the trial court is hereby affirmed. Costs of this appeal are taxed to the Appellant, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.

8